JOSEPHINE GIGLIO ET AL. *v.* CONNECTICUT LIGHT AND POWER COMPANY

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and WRIGHT, Js.

---

Argued November 15, 1979—decision released April 15, 1980

*William B. Fitzgerald, Jr.,* with whom were *John C. Bullock* and, on the brief, *Anthony M. Fitzgerald,* for the appellant (defendant).

*Thomas L. Brayton,* for the appellee (named plaintiff).

WRIGHT, J. In October of 1959, the defendant Connecticut Light and Power Company converted a coal burning home furnace to gas operation for the named plaintiff Josephine Giglio (hereinafter the plaintiff) in her apartment in Waterbury. On October 7, 1967, the plaintiff's daughter, feeling cold, raised the thermostat regulating the furnace. When the furnace did not start, she checked the system's "Baso Safety Switch," an indicator designed to tell whether the pilot light was on or off. If the pilot light were on, the color silver should have appeared in the window with the word "on" displayed. If the pilot light were off, the word

"off" and the color red should have appeared. The indicator on the plaintiff's Baso safety switch always showed partially silver and partially red, thereby confusing the plaintiff.

On numerous occasions prior to the incident in question, the plaintiff Josephine Giglio had informed Connecticut Light and Power Company employees of the condition of the indicator. On those occasions the defendant's employees told the plaintiff to check to see if the pilot light was lit. In order to check to see if the pilot light was on, the plaintiff necessarily had to open the furnace door.

On this particular occasion, the plaintiff's daughter opened the furnace door and observed that the pilot light was on, but at the same time the furnace was not running and no heat was being generated. The plaintiff Josephine Giglio then checked the furnace and pilot light herself. When she opened the furnace door, there was a simultaneous "puff" or "roll-out" of flames that shot out and severely burned the plaintiff.

At trial, the plaintiff's claim sounded in counts of negligence and strict liability in tort. The jury returned an identical verdict for the plaintiff Josephine Giglio on both counts.

Where there are two or more counts, a general verdict will be upheld if any of the counts are valid. *Franks* v. *Lockwood,* 146 Conn. 273, 279, 150 A.2d 215; *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 525, 95 A.2d 263; *Bulkley* v. *Andrews,* 39 Conn. 523, 534. Similarly, where there are two or more distinct causes of action, a general verdict will cure an erroneous charge as to one of them. *Barbieri* v. *Pandiscio,* 116 Conn. 48, 53, 163 A. 469.

In view of the foregoing, we are restricting our discussion to the second count of the substitute complaint relating to strict liability in tort. We express no opinion as to the negligence claim.

The defendant has assigned numerous errors. Some of these assignments would be pertinent if the judgment on the first count relating to negligence were to be scrutinized by this court. Since we are restricting our opinion, however, to the second count relating to strict liability in tort, there remain only three main issues to be reviewed.

## I

DO THE EVIDENCE AND THE LAW SUPPORT A PLAINTIFF'S VERDICT ON THE THEORY OF STRICT TORT LIABILITY?

The issue in this case is whether the defendant Connecticut Light and Power Company's failure adequately to warn the plaintiff of the possibility of a "roll-out" in the event that the furnace door were opened while the pilot light was on but with the furnace not running constituted an unreasonably dangerous condition, thereby rendering the furnace defective. We answer this issue in the affirmative. Under the doctrine of strict liability in tort we find that the jury had sufficient evidence upon which to hold the defendant liable for the damages caused by its defective product.

In *Garthwait* v. *Burgio,* 153 Conn. 284, 216 A.2d 189, we accepted the principles adopted by the American Law Institute as contained in § 402A of the Restatement (Second), Torts, establishing strict liability in tort. We have reaffirmed those principles in subsequent cases. *Wachtel* v. *Rosol,* 159

Conn. 496, 271 A.2d 84; *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 227 A.2d 418.

In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. Restatement (Second), Torts § 402A (1965); see *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 562, 227 A.2d 418.

The parties did not dispute that the defendant was in the business of selling or leasing gas furnaces, nor is it disputed that the gas furnace reached the plaintiff without substantial change in condition. The focus of this case then is whether the furnace was in a defective condition unreasonably dangerous to the plaintiff.

The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce, not with the specific conduct of the defendant. 2 Dooley, Modern Tort Law § 32.35 (1977). The plaintiff must prove that the product is unreasonably dangerous. Comment i of the Restatement (Second) of Torts, § 402A, defines an "unreasonably dangerous" product as one "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." In

this regard, it is important to note that it is not necessary that the plaintiff in a strict liability tort action establish a specific defect, so long as there is evidence of some unspecified dangerous condition. See *Lindsay* v. *McDonnell Douglas Aircraft Corporation,* 460 F.2d 631, 637 (8th Cir. 1972); 2 Dooley, Modern Tort Law, op. cit., § 32.49; 63 Am. Jur. 2d, Products Liability § 15. Whether a product is unreasonably dangerous is a question of fact to be determined by the jury. As we recently stated, "[t]his includes those questions arising under § 402A, and the jury can draw their own reasonable conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large." *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 23, 364 A.2d 175.

It is well established in this jurisdiction; *Tomer* v. *American Home Products Corporation,* 170 Conn. 681, 689, 368 A.2d 35; *Basko* v. *Sterling Drug, Inc.,* 416 F.2d 417 (2d Cir. 1969); as well as in a majority of other jurisdictions; see generally, 2 Dooley, Modern Tort Law, op. cit., § 32.39; that "[a] product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities." See Restatement (Second), Torts § 402A; *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 365 A.2d 1180; Noel, "Manufacturer's Negligence of Design or Directions for Use of a Product," 71 Yale L.J. 816 (1962); Prosser, "The Fall of the Citadel," 50 Minn. L. Rev. 791, 826 (1965–66).

Dean Prosser, the Restatement (Second) Reporter, states: "There is no dispute that the seller is under a duty to give adequate warning of unreasonable dangers involved in the use of which

he knows, or should know. The duty extends not only to dangers arising from improper design or other negligence in manufacturing, but also to dangers inseparable from a properly made product of the particular kind." Prosser, Law of Torts (4th Ed. 1971), pp. 646–47. See *Basko* v. *Sterling Drug, Inc.,* supra, 426. In other words, the failure to warn in such circumstances is, of itself, a defect. Prosser, op. cit., p. 659.

In the case at hand, the facts clearly show that the defendant knew, or should have known, of the potentiality of a dangerous roll-out occurring. The evidence revealed that the manufacturer anticipated, and that the defendant was aware of, this dangerous possibility.

The safety unit contained no warnings. The only wording on the unit constituted instructions, intended for a service person, and for the consumer, on how to start the pilot light in the event it went out.[1] Moreover, these instructions were applicable only where the pilot light was out. There were no instructions or warning on what to do, or what not to do, when the pilot light was on, but the furnace was not running and no heat was being generated, as was the situation in this case. In any event, the duty to warn involves more than instructions intended for service personnel. The warning must consider the consumer's comprehension. Technical language or instructions are insufficient. Similarly, language directed to persons who could not reason-

---

[1] These instructions read:

"1. Close main and pilot burner gas valves and wait at least five minutes for unburned gas to escape.

2. Turn on pilot gas only and ignite pilot gas. Press release button and hold firmly pressed in for 30 seconds. Baso will then remain in operation position and switch will close circuit."

ably be expected to understand the nomenclature is insufficient. *West* v. *Broderick & Bascom Rope Co.,* 197 N.W.2d 202 (Iowa 1972); 2 Dooley, Modern Tort Law, op. cit., § 32.39. Warnings must specifically identify for the user the danger inherent in the product's use.

Moreover, on several occasions the plaintiff notified the defendant's employees that the safety unit on the furnace did not clearly indicate whether the pilot light was on. The defendant's employees' instructions to the plaintiff to open the furnace door to see if the pilot light was on in no way resembles a warning. As stated above, the defendant knew the capabilities of the furnace to accumulate unburned fuel which could result in a dangerous roll-out. The defendant had a duty adequately to warn the plaintiff of this unreasonably dangerous condition.

The failure to place an adequate warning on the furnace's safety unit, as well as the failure verbally to warn the plaintiff of the possibility of a roll-out, amount to a defect in the furnace giving rise to an unreasonably dangerous condition. Upon the evidence presented, the jury could properly conclude that the defendant was strictly liable in tort for the injuries resulting therefrom.

## II

DID THE TRIAL COURT ERR IN ALLOWING AN AMENDMENT TO ADD ALLEGATIONS OF DEFECTS IN THE PRODUCT?

As previously stated, the accident occurred on October 2, 1967. Original counsel brought suit on September 30, 1968. On August 6, 1974, the plaintiffs filed a motion to amend their substitute complaint to allege that the defendant permitted certain

defects to remain in the furnace system. The amendment was allowed by the trial court. In this appeal the defendant claims that the trial court erred in allowing such an amendment more than seven years after the accident occurred.

The defendant makes no claim that the amendment resulted in a delay or surprise. The trial took place in December, 1976. In the intervening two and one-third years from the date of the amendment, the defendant conducted a number of experiments and tests on various parts of the furnace system. In view of the fact that the court has broad discretion on the allowing of amendments, we must examine the pleadings to determine whether the amendment injected a completely new cause of action.

An examination of the third count of the original complaint reveals the following paragraphs:

"5. Said purported safety unit was sold to plaintiff Josephine Giglio in a defective condition unreasonably dangerous to plaintiff Josephine Giglio and reach [sic] the plaintiff Josephine Giglio without substantial change in condition in which it was sold.

"6. On or about October 7, 1967, as a result of the continuing tortuous [sic] conduct of defendant The Connecticut Light & Power Company, gas in said furnace exploded and shot flames on the plaintiff Josephine Giglio and caused her the hereinafter stated severe burns and injuries.

"7. The tortuous [sic] conduct of defendant The Connecticut Light & Power Company continued from the time of said sale of the purported safety unit until October 7, 1967 because the defendant The Connecticut Light & Power Company continu-

ally permitted said purported safety unit to be available for use although they knew or should have known that said purported safety unit was defective and inherently dangerous and a continuing source of unreasonable risk of injury to plaintiff Josephine Giglio and they failed to indicate and warn plaintiff Josephine Giglio by label or otherwise of the dangers she was exposed to."

In *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724, we stated:

"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778; *Veits* v. *Hartford,* 134 Conn. 428, 434, 58 A.2d 389. 'A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action.' *Pavelka* v. *St. Albert Society,* 82 Conn. 146, 147, 72 A. 725. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same."

As to relation back of amendments, we said in *Keenan* v. *Yale New Haven Hospital,* 167 Conn. 284, 285, 355 A.2d 253, that "[a]mendments relate back to the date of the complaint unless they allege a new cause of action."

This doctrine is akin to rule 15 (c) of the Federal Rules of Civil Procedure, which provides in pertinent part: "(c) RELATION BACK OF AMENDMENTS.

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Pursuant to this rule the court in *Hockett* v. *American Airlines, Inc.*, 357 F. Sup. 1343 (N.D. Ill. 1973), found that an amendment to add a spouse to allege a claim for loss of consortium related back. That court summarized (pp. 1347–48) the law as follows:

"Rule 15 (c) is based upon the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford, 3 Moore's Federal Practice para. 15.15 [3]. The objective of state statutes of limitations, to protect persons from the necessity of defending stale claims, is served under Rule 15 (c), since the amendment will not relate back unless the original pleading has given fair notice to the adverse party that a claim is being asserted against him from some particular transaction or occurrence, Wright, Law of Federal Courts, p. 276 (2d ed. 1970)."

In reviewing the pertinent law and the allegations of the original complaint, we find in the instant case that the court did not abuse its discretion in allowing the amendment specifying defects in the furnace equipment.

## III

IS THE CLAIM OF THE PLAINTIFF JOSEPHINE GIGLIO BARRED BY THE APPROPRIATE STATUTE OF LIMITATIONS?

The claim in this case is based on a continuing course of conduct. The converting of the furnace

was done on October 12, 1959, but on several occasions after 1959, the plaintiff Josephine Giglio notified the defendant of difficulties with the furnace, and the defendant on those occasions gave the plaintiff various instructions. It was for the jury to say whether such instructions were adequate.

In *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793, we said: "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 174, 127 A.2d 814." In that case the court held that the sale of a defective cartridge, without indicating the danger on the label, was a continuing omission of a duty to the prospective user of the cartridge.

As the present suit was pending on June 4, 1976, it comes within the purview of § 52-577a[2] of the General Statutes, which provides that no strict tort liability action for a defective product shall be brought but within three years of the date of injury, and not later than eight years from the date of sale, lease or bailment of such product.

[2] "[General Statutes] Sec. 52-577a. LIMITATION OF ACTION BASED ON STRICT TORT LIABILITY FOR PRODUCTS IN DEFECTIVE CONDITION. (a) No action to recover damages for injury to the person or to real or personal property caused by any product in a defective condition shall be brought against one who manufactures, sells, leases or bails any such product but within three years from the date when the injury is first sustained, discovered or in the exercise of reasonable care should have been discovered except that no such action may be brought later than eight years from the date of sale, lease or bailment of such product.

(b) In any such action the seller, lessor or bailor may implead any third party who is or may be liable to him for all or part of

While the record indicates that the furnace was converted to a gas furnace on October 12, 1959, the record also indicates that the offending Baso switch was first installed on September 29, 1961, and the solenoid valve was first installed on March 10, 1961. On subsequent dates there were repeated complaints by the plaintiff to the defendant concerning the furnace, and repeated instructions and advice given to the plaintiff by the defendant.

As suit was brought on September 30, 1968, it is clear that the action was commenced within three years of the accident and within eight years of the installation of the alleged defective device.

We distinguish this case from *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 365 A.2d 1180, which held that liability for a defective product dates from the sale of the product. That case was based on § 52-577 of the General Statutes, prior to the enactment of § 52-577a.

There is no error.

In this opinion the other judges concurred.

---

the plaintiff's claim, if such third party defendant is served with the third party complaint within one year from the date the cause of action brought under subsection (a) of this section is returned to court.

(c) The provisions of this section shall apply to all actions pending on or brought after June 4, 1976 claiming strict liability regardless of the date of the act or omission complained of."

Section 52-577a has been amended by Public Acts 1979, No. 79-483, to provide that the now ten year limitation within which products liability claims must be brought does not apply to consumer claimants.