[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
On November 20, 1992, the plaintiff, Donna Graves, filed an eight count revised amended complaint against defendants Metrex Research Corporation, Robert I. Schattner, sole proprietor of the R. Schattner Company ("Schattner"), The CT Page 8172 Sporicidin Company, a division of Schattner, Surgikos Inc., and Johnson Johnson. The odd numbered counts of the complaint allege a product liability claim brought pursuant to General Statutes §§ 52-572m, et seq. In it, the plaintiff alleges that the defendants were engaged in the production, manufacture, sale and distribution of various sterilizing and disinfecting solutions containing the chemical compound glutaraldehyde and known by various trade names. The plaintiff alleges that while she was employed by the Manchester Memorial Hospital, the hospital provided these solutions, sold to it by the defendants, for the purpose of sterilizing certain hospital equipment. As a result of such use, the plaintiff has been diagnosed as having contact dermatitis.
The plaintiff further alleges that by virtue of General Statutes §§ 52-572m, et seq., the defendants are liable to the plaintiff in one or more of the following respects: (1) Sporicidin was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk or injury; (2) the defendants failed to adequately warn and instruct the plaintiff as to the dangers in the use of Sporicidin; (3) the defendants failed to adequately warn and instruct the plaintiff as to the appropriate procedures for using Sporicidin; (4) the defendants misrepresented to the plaintiff that Sporicidin was safe for the use to which it was put; (5) the warnings and instructions which were given and which accompanied each Sporicidin solution were inadequate and failed to provide sufficient notice to the plaintiff of the potential hazards associated with its use; (6) the defendants were negligent in that they knew or should have known of the dangerous characteristics of the solutions yet continued to manufacture and distribute the solution; (7) the defendants breached their implied warranty of merchantability in that the solutions were not safe or fit for its intended purpose; and (8) the defendants breached their express warranty that the solutions were safe when used for their intended purpose.
In the even numbered counts the plaintiff repeats the allegations made in count three but adds that the harm suffered by the plaintiff was the result of the defendants' reckless disregard for the plaintiff's safety. The defendants have now filed motions for summary judgment as to those counts of the plaintiff's complaint directed against each defendant, along with several CT Page 8173 affidavits. The plaintiff has filed a memorandum in opposition to the defendants' motion for summary judgment along with various exhibits.
The purpose of a motion for summary judgment is "to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial."Orenstein v. Old Buckingham Corp., 205 Conn. 572, 574,534 A.2d 1172 (1987). Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to all material facts and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; Less v.Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). The test for the granting of a summary judgment motion is "`whether a party would be entitled to a directed verdict on the same facts.'" Connell v. Colwell, 214 Conn. 242, 247,571 A.2d 116 (1990).
The defendants argue in their memorandum that the plaintiff's claims of inadequate labeling or warnings are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C.A §§ 136 et seq. In response, the plaintiff argues that because the solutions are not pesticides and because they are not presently registered as pesticides with the United States Environmental Protection Agency ("EPA"), the defendants lack standing to allege FIFRA preemption. Furthermore, the plaintiff argues that the claims of breach of warranty and strict tort liability do not require any reliance by the plaintiff on any representation of the defendants regulated by FIFRA.
As an initial matter, the Court finds that the solutions were, at all times relevant, "pesticides" within the meaning of FIFRA. The Court is persuaded by the reasoning of Keneppv. American Edwards Laboratories, 859 F. Sup. 809 (E.D.Pa. 1994), which addressed a similar suit involving the manufacture of a sterilizing and disinfecting solution containing glutaraldehyde. That court stated that "[U]nder FIFRA, the term `pesticide' means `any substance intended for . . . destroying . . . any pest.' 7 U.S.C. § 136(u). The term `pest' includes any form of `virus, bacteria, or other micro-organism (except viruses, bacteria or other micro-organisms on or in living man or other living animals).'" 7 U.S.C. § 136(t). The defendants' products are CT Page 8174 designed in part to kill the Human Immunodeficiency Virus (Type 1) on hospital instruments, and are not for use "on or in living man". Accordingly, the court finds that the defendants' products are `pesticides' within the meaning of FIFRA." Id., 816 n. 4.
Standing and aggrievement are "practical concept[s] designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Light Rigging Co. v. Dept. of PublicUtility Control, 219 Conn. 168, 172, 592 A.2d 386 (1991). The plaintiff alleges in her complaint that she used the solutions from about October, 1989 to January, 1991. However, as early as September 19, 1989, the EPA acknowledged its registration of the solutions and approved of the defendants' labeling of the solutions. With respect to Sporicidin, it is uncontroverted that the defendants voluntarily canceled its Sporicidin registration in June of 1993. The plaintiff has offered no suggestion that at the time she used Sporicidin it was unregistered or distributed by the defendants without EPA approved product labeling. Plaintiff's argument that defendants have no standing to raise the issue of FIFRA preemption is without merit.
Although the issue of federal preemption of state failure-to-warn claims under FIFRA appears to be an issue of first impression in Connecticut, federal cases have considered the issue in some detail. In FIFRA, Congress sought to create a comprehensive licensing and labeling scheme for pesticides and other poisonous devices designed to kill physically and economically harmful organisms. Worm v. American CyanamidCo., 970 F.2d 1301, 1305 (4th Cir. 1992), aff'd on reh'g,5 F.3d 744 (4th Cir. 1993). Under FIFRA, no pesticide may be sold in the United States unless it has been registered with the EPA. 7 U.S.C.A. § 136a(a). Detailed EPA regulations control the form and content of pesticide labels. See generally 40 C.F.R. § 156.10 (1990).
Congress set forth the extent to which the states may regulate pesticides in FIFRA's section 136v:
(a) In General CT Page 8175
 A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited. by this subchapter.
(b) Uniformity
 Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
7 U.S.C § 136v. Section 136v therefore permits States wide latitude in regulating the sale or use of pesticides.Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 611,111 S.Ct. 2476, 2485, 115 L.Ed.2d 532, 547 (1991). However, it expressly prohibits States from imposing labeling or packaging "requirements" that differ from or add to FIFRA's requirements. 7 U.S.C. § 136v(b). It is this prohibition that defendants argue amounts to federal preemption of any state product liability claim based on failure to warn.
Subsequent to the United States Supreme Court's decision in Cipollone v. Liggett Group, Inc., 505 U.S. ___,112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), numerous federal circuit and district court decisions have determined that Section 136v(b) preempts state common law tort claims based upon a failure to adequately label or warn. MacDonald v. Monsanto, 27 F.3d 1021
(5th Cir. 1994); Worm v. American Cyanamid Co., supra, 5 F.3d 744;King v. E.I. Dupont de Nemours and Co., 996 F.2d 1346
(1st Cir.) cert. dismissed, 114 S.Ct. 490 (1993); Shaw v. DowBrands, 994 F.2d 364 (7th Cir. 1993), Papas v. Upjohn Co.,985 F.2d 516 (11th Cir.) cert. denied, 114 S.Ct. 300 (1993);Arkansas-Platte Gulf Partnerships v. Van Waters Rogers,Inc., 981 F.2d 1177 (10th Cir.) cert. denied, 114 S.Ct. 60
(1993). The question of preemption is, after all, one of federal law, arising under the supremacy clause of article sixth of the United States Constitution. Times Mirror Co. v.Division of Public Utility Control, 192 Conn. 506, 510,473 A.2d 768 (1984).
In Cippollone, the Supreme Court analyzed the preemptive CT Page 8176 effect of federal cigarette labeling laws passed in 1965 and 1969 on state common law failure to warn, warranty and misrepresentation actions. The Public Health Cigarette Smoking Act of 1969, 15 U.S.C.A. §§ 1331 et seq. (the "Cigarette Act") provides in part:
 (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
15 U.S.C.A. § 1334(b). The Cippollone Court rejected the plaintiff's/petitioner's argument that the phrase "requirement or prohibition" limits the Cigarette Act's preemptive scope to positive enactments by State legislatures and regulatory agencies. The Court stated:
 The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." San Diego Building Trades Council v. Gorman, 359 U.S. 236, 247 1959).
Id., 112 S.Ct. at 2620. The Court then held that the Cigarette Act preempted the petitioner's state law claims for failure to warn, inadequate labeling, and breach of implied warranty. Id., 112 S.Ct. at 2621.
The preemptive language in FIFRA's, § 136v(b) is no less sweeping than that of the Cigarette Act's § 1334(b) and suggests no distinction between positive enactments and the CT Page 8177 common law. Kenepp v. American Edwards Laboratories, supra,859 F. Sup. 813.; Papas v. UpJohn Co., supra, 985 F.2d 518;Levesgue v. Miles Inc., 816 F. Sup. 61, 69 (D.N.H. 1993). The rationale of the Cippollone decision makes clear that any state common law tort action that requires the finder of fact to impose requirements for labeling pesticides is expressly forbidden by section 136v(b). Therefore, to the extent that the plaintiff's claims require a showing that the solutions' labelling or packaging "should have included additional, or more clearly stated, warnings, those claims are preempted."Cippollone, supra, 112 S.Ct. at 2621-22.
"In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. Restatement (Second), Torts 402A (1965); see Rossignol v. Danbury School of Aeronautics, Inc.,154 Conn. 549, 562, 227 A.2d 418." Giglio v. Connecticut Light Power Co., 180 Conn. 230, 234, 429 A.2d 486 (1980). At issue in this case is defendants' claim that the second prong of the above requirements, is, as a matter of law, not provable by the plaintiff.
The established rule in Connecticut is that "[a] product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities.Tomer v. American Home Products Corporation, 170 Conn. 681,689, 368 A.2d 35 (1976); see also General Statutes 52-572q;Giglio v. Connecticut Light Power Co., 180 Conn. 230, 235429 A.2d 486 (1980); 2 Restatement (Second), Torts 402A. Under such circumstances, the failure to warn, by itself, constitutes a defect. See Giglio v. Connecticut Light PowerCo., supra, 236; Prosser, Torts (4th Ed.) 99, p. 659." (Internal quotation marks omitted.) Ames v. Sears, Roebuck Co., 8 Conn. App. 642, 645, 514 A.2d 353, cert. denied,201 Conn. 809, 515 A.2d 378 (1986). A product is in a defective condition unreasonably dangerous for two additional reasons: (1) a manufacturing defect; or (2) a design defect. See W. Prosser W. Keeton, Torts (5th Ed. 1984) § 99, p. 695. CT Page 8178
The complaint and accompanying documents are devoid of any evidence or allegation that the defendants' product contained any manufacturing defect. As discussed above, to the extent that the plaintiff's claims require a showing that the solutions' labelling or packaging "should have included additional, or more clearly stated, warnings, those claims are preempted." Cippollone, supra, 112 S.Ct. at 2621-22. The plaintiff does argue in her supplemental brief, dated February 21, 1995, that the solutions contained design defects and that she will rely upon the doctrine of res ipsa loquitur to prove the alleged defect. The plaintiff, however, is attempting to reconcile two incompatible theories of liability, the distinction between which "can be a nebulous one." Seavey v.Northeast Utilities, 10 Conn. L Rptr. 633, 634 (January 7, 1994) (Berger, J.).
"The term strict liability is synonymous with `liability without fault.' That is, in certain situations, although a defendant is guilty of no fault, he is nonetheless held liable for his actions." Id., 634. "`Under this doctrine, a plaintiff is not required to show that his loss was caused by the defendant's negligence.'" Id., 634, quoting Green v.Ensign-Bickford Co., 25 Conn. App. 479, 482, 595 A.2d 1383
(1991). See also, Giglio v. Connecticut Light Power Co.,
supra, 180 Conn. 234 ("The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce, not with the specific conduct of the defendant."). On the other hand, "[t]he element of fault is not disposed of when a plaintiff relies on the doctrine of res ipsa loquitur." Seavey v. Northeast Utilities, supra,10 Conn. L. Rptr. 634. The doctrine of res ipsa loquitur, when invoked, permits the jury to infer negligence based on the circumstances of the incident even though no direct evidence of negligence has been introduced. Malvicini v. StratfieldMotor Hotel, Inc., 206 Conn. 439, 441-42, 538 A.2d 690 (1988). Furthermore, whether the doctrine of res ipsa loquitur applies is a matter of law for the court. Giles v. New Haven,228 Conn. 441, 446, 636 A.2d 1335 (1994). Thus, in this case, the doctrine of res ipsa loquitur is unavailing to the plaintiff as a method of proving a defect in the solutions' design. Because the plaintiff has offered nothing which would raise a genuine issue as to defects in the solutions' design, it is clear that summary judgment must be granted to the defendants on the plaintiff's claim of strict liability. CT Page 8179
The plaintiff also alleges, in a general fashion, breach of implied and express warranties that the solutions were safe and fit for the general uses and purposes for which it was intended. Implied warranties are statutory obligations which arise by operation of law. See 67A Am. Jur. 2D Sales § 743 (1964). Connecticut has codified the implied warranty of merchantability, which, unless excluded or modified, is always implied in a sale of goods by a merchant and includes the statutory requirement that such goods "are adequately contained, packaged, and labeled as the agreement may require." General Statutes § 42a-2-314(2)(e).
As discussed above, FIFRA preempts any claims based on labeling requirements imposed by states. 7 U.S.C.A. § 136v(b). Therefore, to allow a breach of implied warranty to proceed would be to permit a requirement to be imposed by state law in violation of Section 136v(b). Accordingly, summary judgment must be granted to the defendants on the plaintiff's claim of breach of implied warranty.
In Connecticut an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . ." General Statutes § 42a-2-313(1)(a). The plaintiff bears the burden of proving the existence of an express warranty. Venzina v. Nautilus Pools, Inc., 27 Conn. App. 810,816, 610 A.2d 1312 (1992). The plaintiff argues that FIFRA does not preempt Occupational Safety and Health Administration ("OSHA") regulations which require manufacturers of chemical products to provide every employer and employee, to whom such product is sold, with an updated Material Safety Data Sheet ("MSD Sheet"). An MSD Sheet contains, among other things, information about the potential health risks involved in using the product. Kenepp v.American Edwards Laboratories, supra, 859 F. Sup. 817, n. 5. The plaintiff further argues that the defendants breached this independent statutory duty under OSHA by failing to provide adequate warnings concerning the dangers of the solutions in the MSD Sheet provided to the plaintiff.
Comparing § 42a-2-313(1)(a) to plaintiff's complaint demonstrates that the very nature of the plaintiff's allegation, does not raise the required allegation of an "affirmation of fact or promise." At most, plaintiff alleges a failure to warn in different garb. In any event, the court CT Page 8180 finds that "because the MSD Sheet is a required disclosure under federal law, the representations made therein were not directed at consumers in order to induce purchases of the product." Id., 817. Thus the MSD Sheet was not "part of the basis of the bargain" between the defendants and potential buyers. Id., 817, and cannot constitute an express warranty as to the safety of the product. Accordingly, summary judgment must be granted to the defendants on the plaintiff's claim of breach of express warranty.
Finally, the plaintiff alleges that the defendants misrepresented to her that the solutions were safe for the use to which it was put. The plaintiff, however, has presented no evidence of representations made to her by the defendants other than those contained in their labeling or MSD Sheet. Accordingly, summary judgment must be granted to the defendants as to the plaintiff's claim of misrepresentation.
For the foregoing reasons, summary judgment for the defendants against the plaintiff is granted.
Koletsky, J.
CT Page 8180