[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COMPLAINT (#250)
CT Page 15313
This personal injury action was commenced by complaint dated August 2, 1994. In sum, the plaintiff alleges that on April 29, 1993, while he was working on a construction project at the Foxwoods Casino Complex in Ledyard, Connecticut, he was injured when struck by an object negligently dropped by an employee of the defendant, McPhee Sons, Ltd., a Connecticut corporation which the plaintiff claimed was performing work at the job site through its agents and servants. In a separate count, the plaintiff has made claims against the defendant C.R. Klewin, Inc., as the general contractor at the work site.
By pleading dated April 15, 1999, the plaintiff seeks to amend his complaint by changing the name of the defendant from McPhee Sons, Ltd., to McPhee, Ltd. The plaintiff's assertion that he is entitled to substitute McPhee, Ltd., for McPhee 
Sons, Ltd., is based on the legal principals of misnomer and successor liability. This memorandum follows several days of testimony, arguments of counsel, and the submission of written briefs.
It is apparent from the evidence that on the date of the accident, McPhee Sons, Ltd. had no employees at the Foxwoods work site. At the time, the electrical contracting was being performed by employees of J.W.P. McPhee, Inc. The plaintiff, however, does not seek to substitute J.W.P. McPhee as the defendant. Rather, he seeks to name McPhee, Ltd., claiming that McPhee, Ltd. is the successor in liability to J.W.P. McPhee, Inc.
Evidence elicited at the hearing shows that in 1974, Edward McPhee was the sole shareholder and president of an electrical contracting company known as McPhee, Ltd. He then sold his stock ownership in McPhee, Ltd., to J.W.P., Inc., a publically traded electrical contractor based in New York. In conjunction with this transaction, Mr. McPhee entered into an employment contract with J.W.P. Inc., through which he was retained as the president of McPhee Ltd., and he became one of its three directors. The other two directors were designated by J.W.P., Inc. For a period following Mr. McPhee's sale of his stock in McPhee, Ltd., he continued in business operations under the same name and at the same address but under changed circumstances. While Mr. McPhee maintained daily operational control of the corporation's activities, strategic decisions relating to financing and bidding emanated from the J.W.P., Inc., corporate office. In 1991, McPhee CT Page 15314 Ltd., underwent a name change to J.W.P. McPhee, Inc. Subsequently, in November, 1993, J.W.P. McPhee, Inc., changed its corporate name to J.W.P. McPhee of Hartford, Inc.
During the latter part of 1992 and in early 1993, J.W.P. Inc., was experiencing financial difficulties. Accordingly, during Mr. McPhee's negotiations for work at the Foxwoods site, officials of the general contractor, Klewin, proposed that Mr. McPhee undertake his subcontracting responsibilities through a corporation he owned and controlled, known as McPhee Sons Ltd., in order to avoid any direct involvement with J.W.P. McPhee, Inc., or its parent, J.W.P. Inc. Thus, McPhee Sons Ltd., became the designated subcontractor. McPhee Sons Ltd., then orally contracted with J.W.P. McPhee, Inc., to perform the actual electrical contracting services. This arrangement was agreed to by officials from Klewin, J.W.P. Inc., and Mr. McPhee with the understanding by Mr. McPhee that overall decision-making authority for the job rested with J.W.P. Inc., notwithstanding the fact that the primary contract was between Klewin and McPhee Sons, Ltd.
During 1992 and 1993, Mr. McPhee became increasingly dissatisfied with his arrangement with J.W.P. Inc. He felt that retention of financial and bidding authority control by J.W.P. Inc., put the continuing viability and reputation of his business at risk. He was also concerned that J.W.P. Inc.'s financial difficulties could negatively influence his business operation. Accordingly, on November 6, 1993, Mr. McPhee, organized a corporation known as McPhee Ltd., (the same name as the former corporation, which had undergone a name change) and this corporation purchased most of the assets of J.W.P. McPhee, Inc. Thus, as of November 8, 1993, McPhee Ltd. owned most of the assets formerly possessed by J.W.P. McPhee, Inc.
It is the essence of the plaintiff's claim that since Mr. McPhee always did business at the same address, retained operational control, and had actual knowledge of the pendency of this action, the corporation he organized in November, 1993, is the proper defendant as a successor to J.W.P. McPhee, Inc., and the named defendant, McPhee Sons, Ltd., is simply a misnomer for J.W.P. McPhee, Inc.
Our law permits a plaintiff who has sued the right party but misnamed him to amend his complaint to accurately state the defendant's name. Pack v. Burns, 212 Conn. 381, 562 A.2d 24
CT Page 15315 (1989) "An amended complaint, if permitted, relates back to and is treated as filed at the time of the original complaint unless it alleges a new cause of action. . . . While an amendment that corrects a minor defect relates back to the date of the original complaint, one stating a separate cause of action is barred by the statute of limitations. Further, if the amendment is deemed to be a substitution or entire change of a party, it will not be permitted. . . . If the amendment does not affect the identity of the party sought to be described in the complaint, but merely corrects the description of that party, the amendment will be allowed. . . . The test applied in order to determine whether an amendment is correcting a misnomer as opposed to substituting a new party or claim requires consideration of the following: (1) whether the defendant had notice of institution of the action, (2) whether the defendant knew he was a proper party, and (3) whether the defendant was prejudiced or misled in any way. . . ." (Citations omitted.) Kaye v. Manchester,20 Conn. App. 439, 444, 568 A.2d 459 (1990).
Mr. McPhee, as the President of J.W.P. McPhee, Inc., had actual notice of the institution of the law suit; he knew that J.W.P. McPhee, Inc., and not McPhee Sons, Inc., was the subcontractor on the work site; and since his knowledge is charged to the corporation, the corporation was not misled to its prejudice by the misnomer. Under these circumstances, an amendment to name J.W.P. McPhee, Inc., if permitted, would relate back to the date of original filing and would not be barred by the applicable statute of limitations.
However, this is not what the plaintiff requests. Instead, he seeks to name, as the proper defendant, McPhee Ltd., on the basis that McPhee Ltd, is the successor in liability to the properly sued but misnamed defendant.
If the claim of successor liability constitutes a new cause of action, the proposed amendment will not relate back in time to the original complaint and will be barred by the statute of limitations. It is well settled that "[a]mendments relate back to the date of the complaint unless they allege a new cause of action." (Alterations in original.) Giglio v. Connecticut Light Power, 180 Conn. 230, 239, 429 A.2d 486 (1980).
The proposed amended complaint is not a mere restatement of the original complaint with a differently-named defendant. In addition to naming a different defendant, the plaintiff seeks to CT Page 15316 add allegations in support of his claim that McPhee Ltd., is a successor corporation to J.W.P. McPhee, Inc. Thus, in the proposed amended complaint, the plaintiff alleges that "(1) At all times mentioned hereinafter, J.W.P. McPhee, Inc. was a corporation organized under the laws of the State of Connecticut with a principal place of business in the Town of Farmington, County of Hartford and State of Connecticut and with respect tothe allegations of this complaint, was the predecessor ininterest to the defendant McPhee, Ltd. (hereinafter "McPhee")which is also a corporation organized under the laws of the Stateof Connecticut with a principal place of business in the Town ofFarmington, County of Hartford and State of Connecticut."
(Emphasis added.) Second Amended Complaint dated April 15, 1999.
In assessing the plaintiff's motion, the court need not determine whether there is merit, in fact, to the plaintiff's claim that McPhee Ltd., is a successor corporation to J.W.P. McPhee, Inc. If the amendment were permitted, resolution of the successor liability claim would involve a determination of the facts based on the evidence and application of relevant law. At this juncture, the threshold issue of whether bringing such a claim approximately six years after the alleged injury is barred by the statute of limitations is dispositive of the plaintiff's motion. "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . ." General Statutes § 52-584. Thus, if the added claim of successor liability constitutes an "action" within the meaning of the statute, the claim would be time-barred.
The allegation of successor liability constitutes new facts as well as a new theory of liability. In Gurliacci v. Mayer,218 Conn. 531, 590 A.2d 914 (1991), the Supreme Court discussed the circumstances giving rise to a new cause of action. Citing from earlier decisions, the court opined that "[a] cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right CT Page 15317 and that delict constitute the cause of action . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of a single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action . . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated . . . ." (Citations omitted.) Id., 546-47.
Our Supreme Court has recognized that Connecticut's "relation back doctrine is akin to rule 15(c) of the Federal Rules of Civil Procedure, which provides in pertinent part: (c) RELATION BACK OF AMENDMENTS. Whenever the claim of defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . . The policy behind rule 15(c) is that a party, once notified of litigation based upon a particular transaction or occurrence, has been provided with all the notice that statutes of limitations are intended to afford. . . . Because rule 15 provides that an amendment relates back where the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, the objective of our statute of limitations, namely, to protect parties from having to defend against stale claims, is fully served. (Citations omitted.) Id., 547-48.
In this instance the policy based on fair notice would not be served by permitting the proposed amendment. The added allegations against McPhee Ltd., that it is a successor in liability to J.W.P. McPhee, Inc., do not arise out of the April 29, 1993 accident.
As a general proposition, "a corporation which purchases all the assets of another company does not become liable for the debts of its predecessor unless: (1) the purchase agreement expressly or impliedly so provides; (2) there was a merger or consolidation of two of the firms; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability."Ricciardello v. J.W. Gamt Co., 717 F. Sup. 56, 57-58 (D. Conn. 1989). Proof of these elements does not relate to nor flow from CT Page 15318 the April 29, 1993 occurrence. Proof that Mr. McPhee, as the president of J.W.P. McPhee Inc., had actual knowledge of the plaintiff's claimed damages can not reasonably be equated with proof that he was on notice that should a corporation whose shares he owns purchase assets of J.W.P McPhee, Inc., after the date of the accident, the purchasing corporation could be charged as a "successor" in liability for the alleged negligence of J.W.P. McPhee, Inc.'s agents and servants.
The new allegations relating to successor liability state an additional theory of liability and constitute a new cause of action. As such, the amendment is barred by the statute of limitations.
Accordingly, for the reasons stated, the Plaintiff's Request for Leave to Amend Complaint (#250) is denied.
BY THE COURT:
Bishop, J.