[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT KOROWOTNY'S MOTION FOR SUMMARY JUDGMENT
The defendant Korowotny has moved for summary judgment on several grounds. He first claims that the negligent misrepresentation and breach of contract claims set forth in the fourth and tenth counts are barred by the statute of limitations. He also claims he is entitled to immunity from liability pursuant to § 52-557 (N) (b) (7) and (8) of the general statutes and that the elements for a breach of contract claim are not set forth. In supplemental brief he also argues that the negligent CT Page 12031 misrepresentation claim is legally insufficient. The court will discuss each issue and the facts that apply to each issue in its decision.
It should be noted that the plaintiff does not contest the motion for summary judgment filed by the defendant Korowotny as it applies to the negligence claim in the second count nor does she contest the claim by Mr. Korowotny that he is entitled to qualified immunity under federal law as to the § 1983 civil rights claim in the eighth count.
The court will therefore address its decision to the summary judgment insofar as it is directed to the fourth count (misrepresentation) and the tenth count (breach of contract).
STATUTE OF LIMITATIONS ISSUES
 A.
The defendant Korowotny first argues that the misrepresentation claim is barred by the applicable statute of limitations. For the purposes of this motion there is no dispute that the cause of action for negligent misrepresentation accrued on May 28, 1991. Service was not made until May 31, 1994. But the sheriff has submitted an affidavit that the complaint was delivered to him May 28, 1994 and was dated May 24, 1994. Section52-593a provides that a cause of action shall not be lost if the process is delivered to a sheriff within the time provided for and it is served within 15 days. That was done here. So the question before the court is whether the two year statute of limitations (§ 52-584) or the three year statute applies (§ 52-577) to the negligent misrepresentation count. As framed by the parties, the motion for summary judgment raises a legal issue, the resolution of which does not involve any disputed facts. If § 52-577 (three year limitation) applies the motion should be denied as to this count, if § 52-584
applies it ought to be granted.
To determine the applicable statute the nature of the claim has to be examined which means that the court has to look at the pleadings, that is the complaint. In doing so the court, as in a motion to strike, must give that interpretation to the pleadings which is most favorable to the nonmoving party, cf Amodio v.Cunningham, 182 Conn. 80, 82 (1980). CT Page 12032
The Fourth Count alleges the defendant Korowotny was the Building Official for Oxford. It states the defendant made representations to the plaintiff that a house on a certain lot had to be demolished but that it could be rebuilt without additional zoning approvals or upgrading. On the basis of these representations, which it is claimed were not accurate, the plaintiff bought the house and demolished it. Soon thereafter, a stop order was issued prohibiting any further residential use of the property. The defendant is alleged to have known the plaintiff had intended to rebuild on the property; the property is located in a residential zone.
The complaint further alleges that the defendant had a duty to provide accurate information to the plaintiff as to the permitted use of the property and applicable state and local regulations. It is then alleged that the defendant misrepresented that the residence could be demolished and a new one constructed without obtaining new permits and "negligently carelessly or recklessly made such representations in that he knew or should have known that the plaintiff would justifiably rely upon his representations," count 4, paragraph 7.
The plaintiff then alleges that as a result of the defendant's actions and representations the plaintiff cannot make use of the property, the property is worthless and has no fair market value. The plaintiff further claims she has incurred expenses in attempting to build the house on the lot and make use of the property including application and permit fees, attorney and engineer fees and surveying costs, demolition costs she would not otherwise have incurred, and costs of securing other housing accommodations (paragraph 8, 9, count four).
Section 52-577 imposes a three year limitation for torts in general and section 52-584 specifies particular classes of torts for which the limitation period is reduced from three to two years, Egon Neustadt v. Zoning Commission, 18 Conn. Sup. 224,225 (1953). The pleadings in this case in count four advance a negligent misrepresentation claim as opposed to a claim of intentional or innocent misrepresentation.
An examination of the pleadings indicates that there is no claim made of "injury to the person" and although the complaint alleges the defendant acted "negligently, carelessly or recklessly" the addition of a "reckless" tag to the allegations of these pleadings does not covert the count into one alleging CT Page 12033 "reckless and wanton" misconduct in § 52-584 terms. Even the defendant concedes in its brief that the allegation made here is one of negligent misrepresentation. Neither is there an allegation of injury to personal property. So the question becomes, in terms of the language of § 52-584, is there a claim made here for "damages for injury . . . to real . . . . . property caused by negligence." Thus, if a tort is alleged but the tort does not sound in negligence and/or the injury claimed is not for damages for injury to real property then it is not a tort falling within the ambit of § 52-584 and the general three year tort statute, § 52-577, would apply. A two step analysis is required.
(1) is there a claim of negligence
(2) is there a claim for damages for injury to real property
There is no doubt that negligent misrepresentation is a "tort", Williams Ford Inc. v. Hartford Courant Co.,232 Conn. 559, 578 (1995). That being true the way to approach the problem is to determine whether the tort claim in count two of negligent misrepresentation falls into one of those categories set forth in § 52-577. Section 52-584 reads in relevant part:
 "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . ."
The court will address the first issue — does the claim lie in negligence? If not, § 52-584 would not apply. The court concludes the misrepresentation claim does lie in negligence. True the allegation of misrepresentation is a necessary element of this tort but there are several tort theories based on misrepresentation — intentional misrepresentation, fraudulent concealment, negligent and innocent misrepresentation. When our court said a misrepresentation claim is akin to a strict liability claim or one lying in warranty, Johnson v. Healy176 Conn. 97, 101, 102 (1978), Gibson v. Capano, 241 Conn. 725, 730
(1997) it was not holding that no misrepresentation claim could lie in negligence. The court was merely referring to the tort of innocent misrepresentation which does not require an allegation of fault or negligence but does require that misrepresentation be made to induce another to act, of Restatement (Second) Torts § 552 (1) and § 552 (e), see comment (a) to § 552 C CT Page 12034 for historical development of torts based on misrepresentation. A common sense reading must be given to the limitations statutes; they do no define tort law. Torts are defined by cases and given those definitions the applicability of the limitation statutes, §§ 52-577 or 52-584, is determined. The pleadings here allege the defendant violated a duty of care. There is no claim that an intentional misrepresentation was made. There is no claim that an innocent misrepresentation was made to induce action by the plaintiff, thus the basis of the cause of action is not a warranty theory not requiring fault or negligence but the action is based on a negligent misrepresentation and it is specifically so alleged.
But section 52-584 does not encompass, by its terms, all action based on negligence. For example, where a complaint alleges legal malpractice based on negligence § 52-577
applies, the general tort limitation statute, Shuster v. Buckley,5 Conn. App. 473, 474 (1985), Nickerson v. Martin, 34 Conn. Sup. 22,25 (1976) and not § 52-584. Thus, the second step of the analysis must be made and the question must be asked as to whether or not there is a damage claim "for injury . . . to real or personal property." A common sense reading of this language in § 52-584 would appear to exclude from coverage under that statute several of the claims for damages made in the negligent misrepresentation court — thus there are claims for attorney and engineer fees, costs of securing alternative housing accommodations, expenses associated with trying to build a house on the lot in question and otherwise made use of the property, surveying and demolition costs the plaintiff would not otherwise have incurred. As to these claims, although the action lies in negligence, the damage claims do not appear to fall within the terms of § 52-584 so, absent that, § 52-577 with its three year statute of limitations would seem to apply.
The damage claims made in the fourth count which cause the court most difficulty are those for the loss of the property's fair market value, the claim that the property is worthless and the claim that the plaintiff has lost use of the property. A claim of loss of use of residential property can only be analyzed in terms of fair market value. So the question presented is whether a claim of loss of fair market value or an allegation that negligent action has rendered property worthless can be categorized as a claim for damages "for injury . . . to real . . . property" under § 52-584. CT Page 12035
The court could find no Connecticut case dealing directly
with this question. Two cases from Hawaii deal with a limitations statute similar in language to § 52-584. In relevant part § 657-7 HRS reads:
 "Actions for recovery of compensation for damages or injury to persons or property shall be instituted within two years after the cause of action accrued . . ."
In Higa v. Mirikitani, 517 P.2d 1, 3 (1973) the Hawaii Supreme Court said: "Virtually all cases having occasion to construe that section have done so in the context of claims for damages resulting from physical injury to persons or physical injury to tangible interests in property." (Emphasis added by court) thus in Higa the court held that § 657-7 HRS did not apply to a legal malpractice claim for failure to institute suit in a case where the plaintiff had been injured in an auto accident — the court described the lawyer's malpractice as "a non-physical injury to an intangible interest of the plaintiff", ie. the forfeiture through the lawyer's neglect of the client's right of action, id. P. 4. In the later case of Au v. Au, 626 P.2d 173
(1981) the Hawaii court said the statute did not apply to a suit based on fraudulent representations made by a seller of property that a residence did not have water leakages. The buyer sued the owner and his real estate agent for damages resulting from the leakage. The court at page 179 said the "end result of the fraudulent representation was physical injury to appellant's tangible interest in property, `but' the nature of the claim is not the physical injury to property, rather it is the making of the fraudulent representations concerning the condition of the home which induced appellant to purchase it."
But there are cases which appear to differ from the position taken by Hawaii. In Bowen Bowen Inc. v. McCoy-Gibbons Inc.,363 S.E.2d 827 (Ga, 1987) a builder brought suit against a soil engineering firm arising out of allegedly in accurate soil testing which caused the builder to erect a home whose walls developed cracks, id, p. 828. The court held that a Georgia limitations statute applied which read:
 "All actions for . . . damage to realty shall be brought within four years after the right of action accrues." CT Page 12036
The court rejected the arguments of the soil engineering firm that the statute was applicable only to trespass upon or damage to realty and that the firm did not trespass on the property because it entered it with the builders consent. Also, it was argued that there could be no property damage since the property was not occupied at the time of the inspection. The defendant further maintained that where a test on the condition of property turns out to be wrong "the damage is in the nature of an economic loss rather than physical harm or properly damage", id. p. 830. The court rejected these arguments and said at p. 830 that although the erroneous testing did not immediately produce the resultant problems with the structure . . . the gravamen of the contractor's complaints is that the firm's actions led to the damage to the real estate because the construction of the structure was based upon the soil testing and recommendations." Thus, the limitations statute which applied to action for damage to realty governs situations "where the alleged wrongs are the proximate but not the immediate cause of the resulting damage,"id. p. 830. The court cited Oakes v. McCarthy Co., 73 Cal.Rptr. 127
(1968), and Williams v. Thompson, 443 S.W.2d 447 (Tenn, 1969) which reach similar results based on similarly worded statutes.
There is a Connecticut case where the court assumed without discussing that § 52-584 applied in a situation analogous to the one before the court. In Nardi v. AA Electronic SecurityEngineering Inc., 32 Conn. App. 205 (1993) an action was brought in negligence and breach of contract with respect to the installation and maintenance of a residential burglar alarm system. The alleged negligence of the defendant resulted in the failure of the system to activate and warn the police of a break in resulting in a loss of cash, jewelry and other valuables. The court assumed § 52-584 applied in its analysis of the limitations question raised in that case although clearly the "injury . . . to personal property" only proximately resulted from the defendant's action and did not immediately produce the loss to the personal property.[1]
The Tennessee, Georgia and California cases and the Nardi
application of § 52-584 seem to make more sense than the Hawaii approach. When alleged negligence causes property to be worthless or results in loss of fair market value it is difficult to understand why this does not represent "injury" to property. An ordinary person reading the statute would certainly reach that conclusion and there is no good reason why lawyers and judges should not do so too. Therefore, the court believes there is good CT Page 12037 reason to conclude that any claim in count two for lost market value of the property should be barred by application of §52-584 since this is a negligence action and there is a damage claim for injury or damage to real property.
But from the court's perspective there is a real difficulty in adopting this position. In effect, the net result of the court's position is that although a portion of the damage claim on a negligent misrepresentation theory — attorney's fees, demolition costs etc. — is not barred by a limitations statute because the three year statute applies (§ 52-577), another aspect of the claim arising out of the same theory — loss of property value — is barred by another limitations statute (§52-584). This is a harsh result since limitations statutes are merely intended to give notice of claims in a fair time period. It is also an unseemly result in a state that has held, for example, that it would apply a liberal view in permitting amendments to complaints on a theory that they back to the commencement of the original action, Giglio v. Connecticut Light Power Co, 180 Conn. 230, 239 (1980). The federal courts, whose practice is said by the Giglio court to be "akin" to ours in this regard, have been liberal in permitting amendments to relate back and thus avoid limitations claims when there is merely an added claim for relief, see Federal Practice Procedure, Wright, Miller and Kane, Vol 6A, § 1497, cases at footnote 46, page 99.
The problem here is that in their briefs and at oral argument counsel did not specifically and completely address the issues now raised by the court — that is whether damage to the fair market value of real property or negligent action rendering it "worthless" are included within a § 52-584 claim for damages under the statutory rubric that such damage represents an "injury" to real property or even if such a claim is not covered in and of itself should it be otherwise allowed in light of the fact that some of the damages for the very same injury producing tort are viable because the three year limitations statute applies?
This motion for summary judgment was filed soon before trial. The trial date was therefore delayed. The court is prepared to rule that the motion should not be granted on the statute of limitations argument as to damage claims under negligent misrepresentation except those for loss of fair market value of the property or claims that the property is now worthless as a CT Page 12038 result of the defendant's alleged negligent misrepresentations. Counsel can request further argument on this and the court would want further briefing on this specific issue or if this will cause too long a trial delay the matter can be decided by the trial judge. Counsel should contact the court's clerk so that a conference or conference call can be arranged so that these options may be explored.
 B.
Application of the statute of limitations should also not bar the breach of contract claim in the tenth count. The defendant claims the stop work order preventing residential construction of this property was issued May 28, 1991 and the breach of contract claim was not made until the filing of an amended complaint on October 13, 1995. Assuming Section 52-581 applies to this contract claim the defendant notes it was not made until the four and a half years after it accrued and therefore is time barred. The plaintiff claims that the contract claim should be held to relate back to the negligence and misrepresentation claim in the original complaint which for these purposes is accepted as May 28, 1994. It was made clear in Giglio v. Connecticut Light Power Co., 180 Conn. 230, 239 (1980) that our state has a liberal policy on allowing claims to relate back to the initial pleadings. This is so because as the Giglio court said "this doctrine is akin to rule 15 (c) of the Federal Rules of Civil Procedure" which has been liberally interpreted by the federal courts. See generally Federal Practice Procedure Wright, Miller, Kane, Vol. 6A, Section 1497. The whole purpose of the relation back doctrine is to ameliorate the effect of the statute of limitations, Siegel v. Converters Transportation, 714 F.2d 213,216 (CA2, 1983). The fact that an amendment changes the legal theory on which the action was brought or adds a new theory is of no consequence as long as the factual situation on which the action depends remains the same, Zagurski v. American TobaccoCo., 44 FRD 440, 442-443 (D.C. Conn. 1967), see numerous cases cited in Federal Practice Procedure at § 1497, footnotes 39 through 46, pages 94-99. As one federal court said in describing a policy that has not changed in the federal courts:
 "Limitation is suspended by filing of a suit because the suit warns the defendant to collect and preserve his (sic) evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant CT Page 12039 knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to the first statement."
Barthel v. Stamm, 145 F.2d 487, 491 (CA 5, 1944).
An examination of the original complaint and the amended complaint indicates that this contract action should be held to relate back. It arises out of the same factual context and allegations made in the original complaint. The defendant had notice from the beginning that the plaintiff was trying to enforce a claim for injury and loss allegedly sustained because of representations purportedly made by the defendant which he knew or should have known would be relied upon; to paraphraseZagurski v. American Tobacco Company, supra, under these circumstances: "It is not unreasonable to require (the defendant) to anticipate all theories of recovery and prepare its defense accordingly." 44 FRD at p. 443. Because of the court's position on this issue, it will not discuss whether the six year statute of limitations applies under § 52-576 to this contract claim.
NEGLIGENT MISREPRESENTATION:
NECESSARY ELEMENTS
In the original motion for summary judgment, the defendant did not address the claim that the necessary elements for negligent misrepresentation were not alleged. This motion and the accompanying brief were filed June 4, 1997. Plaintiff filed its brief in opposition which is dated July 25. It was only in a reply brief filed August 8, 1997, three days before oral argument, that this specific claim was made. The court agrees with plaintiff's counsel that under these circumstances this matter is not properly before the court.
 IMMUNITY UNDER § 52-557N(b) (7) AND (8) OF THE GENERAL STATUTES
Section 52-557 (N) (a) states in relevant part that there shall be liability for damage to person or property caused by the negligent acts or omissions of a municipality or one of its employees, but then in subsection (b) it goes on to say that:
"(b) Not withstanding the provisions of CT Page 12040 subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his (sic) employment or official duties shall not be liable for damages to person or property resulting from . . . (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . ."
It has been said that § 52-577 (N) "was intended, in a general sense, both to codify and to limit municipal liability, but it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what was being limited." Sanzone v. Board of Police Commissioners,219 Conn. 179, 188 (1991). The common law of municipal immunity is somewhat murky itself.
McQuillin, Municipal Corporations, vol. 18, § 53.04.25 states the following at page 165:
 "The public duty rule provides that where a municipality has a duty to the general public, as opposed to a particular individual, breach of that duty does not result in tort liability . . . . The public CT Page 12041 duty rule is not technically grounded in government immunity, though it achieves the same results. Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place."
Whether a public duty analysis or an immunity analysis, the courts have consistently refused to impose liability for the issuance or failure to issue licenses or permits or for the conduct of or failure to conduct inspections. See § 53.04.40 and § 53.22.50 of McQuillin. These are governmental or discretionary type decisions often involving public health and safety regulations. It would be dangerous to impose liability for negligence regarding such exercises of governmental authority since it might "dampen the ardor of all but the most resolute or the most irresponsible," Gregorie v. Biddle, 177 F.2d 579, 581
(CA2, 1949); courts should not involve themselves in policy decisions which are often not based on issues of negligence as such but more on questions of social policy and practicality. See § 53.04.10, pp. 156-157 of McQuillin.
But that is not what we have here. The gravamen of this complaint is negligence, i.e., negligent misrepresentation. But not all types of negligence recovery are barred by subsection (b) of § 52-577(N). Here, the complaint is not that permits were issued that ought not to have been issued or permits or licenses were not issued that should have been or inspections were conducted negligently or were not conducted when they ought to have been done. The complaint, rather, is that an official or officials who knew or should have known of the need for certain inspections or whether various regulations were or could be applicable, in fact negligently misrepresented such matters, the misrepresentations were relied upon by a citizen and that citizen suffered harm, cf. Reney v. Town of Ridgefield, 1995 WL 681, 543 (Ct. Super. 1995). In a negligent misrepresentation claim the ardor of no official will be dampened in his or her separate and independent decision to issue or not issue a permit or in how he or she conducts an inspection or whether an inspection is conducted at all and courts will not interfere on policy issues if immunity is not granted under (7) and (8) of § 52-577 (N) (b). but public officials will not be protected from having given gratuitous negligent advice that causes loss to people who, the CT Page 12042 advice having been given, rely on it. The court could find no cases apart from Reney directly on point but two New York cases allowed damages where a plaintiff incurred costs in reliance on a certificate of occupancy or permit that was later revoked.Sextone v. Rochester, 301 N.Y.S.2d 887, 888 (1969); 154 East ParkAve. Corp v. City of Long Beach, 350 N.Y.S.2d 974, 979-980 (1973).
Even if the foregoing analysis is not accepted, the problem can be approached from another perspective, given the fact that the pleadings of the non-moving party, in the context of how this defense is being raised, must be given the most favorable reading possible. As the court reads the complaint, the defendant on various dates in April 1991 provided this particular "plaintiff with information and opinions regarding the building, zoning and sanitation regulations for the reconstruction of a residence on (the subject) lot." Count Two, Fourth Count. The claim is made that these representations were incorrect and negligently made according to the complaint.
But whether at common law or as that law has been codified in § 52-577 (N), if issuing or not issuing permits or making or not making inspections is a public duty or discretionary and thus ordinarily municipal immunity would apply, it does not apply in certain situations. Thus, liability can be imposed even for discretionary acts where "it would be apparent to the public officer that his (sic) failure to act would be likely to subject an identifiable person to imminent harm." Shore v. Stonington,187 Conn. 147, 157 (1982). The court cautioned on the limited scope of the exception: "The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." Id. p. 17. But as noted here, the allegations are that this defendant negligently supplied incorrect information regarding specific property which inferentially he knew the plaintiff was considering whether to buy.
Viewed from this perspective, it seems clear that this is not a case about general obligations concerning the issuance or nonissuance of permits or failure to make inspections but falls within the traditional common law exception to the rule prohibiting damages against a municipality for discretionary acts; such an action is permitted where a person is injured after specific negligent acts are directed towards that person — here the allegation being that the official knew that a specific person was about to rely on his negligent representations about CT Page 12043 zoning regulations, the need for permits and sanitation regulations. If the analytical fit for this is not as tight as it could be that, as Sanzone notes, is the problem presented by the statutory language of § 52-577 (N); this approach at least might be said to preserve the common law in this area.
The immunity defense under § 52-577 (N) is not a bar to the negligent misrepresentation claim and the statute has no application to a contract claim.
CONTRACT CLAIM, TENTH COUNT
This claim made in the tenth count is difficult to analyze because both sides persist in referring to it as a contract action. It is alleged in the first paragraph that the defendant, a building Official of the town, provided people "with information regarding the requirements of residential construction under applicable state and local regulations." It is then alleged that at the request of the plaintiff in April 1991 he provided her with information about the building, zoning and sanitation regulations regarding the subject property. The plaintiff, in paragraph 3, says that in reliance on these representations she bought the property and demolished the building on the land. A stop work order was then issued preventing further residential use of the property. It is then alleged that the defendant had a duty to make sure that the information he gave was accurate and a duty to make a sufficient inspection in order to determine if a house could be built on the lot "before recommending its demolition and issuing a building permit." (Paragraph 6.) Paragraph 7 alleges that defendant as an authorized agent of the town agreed that the plaintiff could use the property for a single family residence. Paragraph 8 of the tenth count then alleges that "the failure to allow the use is in breach of an oral agreement with the plaintiff to allow reconstruction of the house and continued residential use of the property."
The defendant in its motion for summary judgment argues that there was a complete lack of consideration and that, as a matter of public policy, town officials should not be recognized as having the authority to bind their towns based on gratuitous advice for which he or she received no consideration and in a situation where the official made no statements that were promissory in nature. CT Page 12044
The plaintiff counters by citing two cases that hold "an exchange of promises is sufficient consideration to support a contract." Town of Trumbull v. State of Connecticut,206 Conn. 65, 73 (1988); Osborne v. Locke Steel Chain Co., 153 Conn. 527,531 (1966). These cases in turn cite earlier cases which make this general statement. Kay Petroleum Corp. v. Piergrossi,137 Conn. 620, 622 (1951); Taft Realty Corp. v. YorkhavenEnterprises, Inc., 146 Conn. 358, 342 (1959). The case which is the source of the holding for this line of cases appears to beFinely v. Swirsky, 103 Conn. 624, 631 (1925). The broad statement that an exchange of promises is sufficient to support a contract must be examined in terms of the context in which this statement appears — it was not meant to overturn basic definitions of consideration. Finlay at page 61 uses language that sounds very much like the doctrine of promissory estoppel set forth in Restatement (Second), Contracts § 90. In its actual holding on the issue now under consideration, the court says at pp. 631-632:
 There is a sufficiently obvious consideration in the two writings in question to sustain a contract obligation for both parties. Each party promises to do certain things and these promises are made because of and in consideration of the promises of the other party. A promise is a declaration by any person of his (sic) intention to do or forbear from anything at the request or for the use of another. A proposal when accepted becomes a promise."
Even giving the defendant's deposition a reading most favorable to the plaintiff and doing the same for the plaintiff's affidavit, it is difficult to find that common law consideration has been shown: "To constitute sufficient consideration for a promise, an act or promise not only must be a detriment to the promise but must be bargained for and given in exchange for the promise." Fisher v. Jackson, 142 Conn. 734, 737 (1955). Nothing was bargained for here and nothing was given to the defendant in exchange for any promise he might have made.
However, giving the pleadings and affidavits submitted by the plaintiff, their most expansive reading a quasi-contractual claim is set forth or one that might be said to be based on promissory estoppel. The defendant recognized this in his first CT Page 12045 brief but sought to argue that the doctrine did not apply here. Connecticut has recognized "the development of liability in contract for action induced by reliance upon a promise, despite the absence of common law consideration normally required to bind a promisor. See Restatement (Second), Contracts § 90 (19783)."Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980);H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443 (1979), which cites a draft section of the Restatement which is now § 129, which itself applies the principles of § 90 to contracts for the transfer land. Also see language in older case of Finlay v.Swirsky, supra, 103 Conn. at p. 631. For general discussion of promissory estoppel, see The Law of Contracts, Calamari 
Perillo, 3d. ed., Chapter 6, pp. 271, et seq. (Calamari).
Under the Restatement (Second), Contracts § 90, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise, but the remedy granted for breach of the promise may be limited as justice requires.
Calamari at pp. 272-273 of Chapter 6, sets forth the four basic requirements of promissory estoppel under the Restatement.
 "(1) Obviously a promise is necessary, a mere statement of future intent is not sufficient nor would, as the defendant suggests, a mere statement of opinion suffice;
 (2) the promise must be one which the promisor should reasonably anticipate will lead the promisee to act or to forbear action;
 (3) the reliance of the promisee must be of a definite and substantial character;
 (4) finally, the promise should be enforced only where injustice can be avoided by the enforcement of the promise."
But given the liberal and equitable nature of the doctrine, it must be emphasized that the fact that the promise is gratuitous does not defeat its operation. As Calamari says at CT Page 12046 page 274:
 "Ordinarily the key difference between a promise supported by consideration and a gratuitous promise supported by promissory estoppel is that in the former case the detriment is bargained for in exchange for the promise of the promisor; in the latter, there is no bargain. The injury is a consequence of the promise, but does not induce the making of the promise."
Or to put it another way, where a party has engaged in detrimental performance because of a promise inducing the performance that "reliance interest should be entitled to protection." Calamari, p. 271.
Framed in these terms and with these limitations, there are no "public policy" reasons why a town official or town, otherwise bound by the actions of its agents, should not be subject to liability under promissory estoppel theory. Municipalities are not protected by a general grant of sovereign immunity and, unless they are granted such immunity by statute or specific common law theory, none of which apply here, it is not appropriate for a trial court to in effect create immunity on some general policy grounds as to particular theories of liability.
Given the affidavit submitted by the plaintiff, Jennifer LeStrange, it is difficult for the court to conclude as a matter of law that the defendant should be granted summary judgment on the tenth count. In paragraph seven, she states she only intended to repair the house. The defendant, according to Ms. LeStrange, said the house was unlivable, it should be demolished. Ms. LeStrange states the defendant represented if she demolished the house he would let her rebuild. In paragraph eight, it states the defendant "also stated that if I agreed to demolish the house that he would issue a demolition permit and a building permit to allow a new house to be built in the same location." These allegations do not read as mere opinion or future intent.
If the promises indicated were made, there is an issue for the jury whether the defendant should have reasonably anticipated the plaintiff would act on that promise. The defendant was a town building official, so there is reason to think a citizen CT Page 12047 coming in contact with him would rely on the type of alleged promise he made here if the fact finder concludes these representations were in fact made.
The reliance was of a definite and substantial character — the house was demolished in contemplation of building a new residence. In any event whether this claim can be proven is certainly a question of fact for the jury.
The attorney for the defendant conducted an effective cross examination of the plaintiff which, if credited by the jury, might make it difficult for her to establish a promissory estoppel claim. But the affidavit submitted by the plaintiff raises a material issue of fact on the viability of the claim made in the tenth count which prevents the court from granting summary judgment on this count.
Corradino, J.