ELEANOR L. TOMER, ADMINISTRATRIX (ESTATE OF
EDWARD TOMER) *v.* AMERICAN HOME PRODUCTS
CORPORATION ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued February 3—decision released April 27, 1976

*Alexander Winnick* and *David W. Skolnick,* for the appellant (plaintiff).

*Gregory C. Willis,* for the appellee (named defendant).

*John J. Cotter,* for the appellee (defendant Anthony Apuzzo).

*Robert W. Weeks, Jr.,* with whom, on the brief, was *James F. Kenney,* for the appellee (defendant Francis X. Foley).

*Richard F. Oburchay,* with whom, on the brief, was *George L. Holmes, Jr.,* for the appellee (defendant Anthony F. DeLibero).

BOGDANSKI, J. The plaintiff administratrix brought this action against the defendants, American Home Products Corporation, Dr. Anthony Apuzzo, Dr. Francis X. Foley, and Dr. Anthony F. DeLibero, for the alleged wrongful death of the decedent, Edward Tomer. In separate counts, she alleged that the decedent's death was caused by the negligence and the breach of warranties of American Home Products in the manufacture and distribution of an anesthetic agent known as Halothane, and by the negligence of the three doctors in their use of Halothane. In addition, the plaintiff alleged that American Home Products was liable on the basis of strict liability in tort.

The central issue in the case concerned American Home Products' alleged failure to warn the medical profession of dangerous propensities of Halothane. Concluding that the elements of proof were the same with respect to all theories of recovery against American Home Products, and that the defect necessary for the imposition of strict tort liability was the same as in implied warranty, the court submitted verdict forms to the jury as to American Home Products on the strict liability count only. The jury returned a verdict for all defendants, and from the judgment rendered the plaintiff has appealed, assigning error in the denial of her motion to set the verdict aside, in the charge to the jury, and in several rulings on evidence.

The plaintiff offered evidence to prove and claimed to have proved the following facts: On April 15, 1967, the plaintiff's decedent was admitted to St. Vincent's Hospital, Bridgeport, with a fracture of the right ankle. Other than that injury, he was in good health. Upon admission his temperature was found to be ninety-nine degrees, which is normal. Surgery was performed on the ankle that same day by Dr. Apuzzo, an orthopedic surgeon. The anesthesia used was Halothane, administered by Dr. DeLibero. On April 16, 1967, the day following surgery, the decedent's temperature had risen to 100 degrees, and by April 17, it had risen to 100.2 degrees. On April 26, 1967, a second operative procedure was performed on the decedent's ankle by Dr. Apuzzo and Dr. Foley. Dr. DeLibero administered the anesthesia, which was again Halothane. That evening, the decedent's temperature rose to 103 degrees, and on April 28 it reached 104.6 degrees. On May 3, 1967, he was comatose and deeply jaundiced. He died the next day. Labo-

ratory tests indicated that the decedent had a hypersensitive reaction to Halothane, and there was testimony that the decedent died from liver damage resulting from the second administration of Halothane.

Prior to and at the time of the decedent's death, American Home Products manufactured and distributed Halothane and knew of its possible hazardous effects. Between 1958 and 1967, it had received numerous letters regarding Halothane's connection with hepatitis and liver necrosis, and as many as twenty-five publications dealing with that subject were in circulation. In 1963, American Home received reports of death following a second administration of Halothane. A national Halothane study was conducted, which reported evidence of massive hepatic necrosis to be considerably higher in patients who had undergone multiple procedures involving Halothane than by those who had undergone only one procedure. In 1963 and 1965, American Home issued "dear doctor" letters to the effect that there were reports of massive necrosis in patients who underwent surgical procedures under anesthetic techniques involving the use of Halothane. No "dear doctor" letters were ever sent by American Home using the words "Warning to Doctors." Prior to April, 1967, American Home did not issue any warnings to the medical profession concerning a second or third use of Halothane on the same patient.

With respect to the defendant doctors, the plaintiff offered evidence to prove that Dr. DeLibero did not examine the decedent after the first operation until just prior to the second one; that he was familiar with the term Halothane hepatitis and had

read about it on numerous occasions; that successive administrations of Halothane under certain circumstances were contraindicated; and that it is the duty of an anesthesiologist to employ techniques providing the greatest degree of safety. There was a view held in the profession that an increased temperature following surgery could be a significant indication of a reaction to the anesthesia administered. Dr. Apuzzo did not know the anesthetic agents that were used during either operation, and he did not discuss the decedent's rise in temperature with Dr. DeLibero prior to the second operation. There was testimony that the standard of care in the community required that any treatment followed by ill effects should not ordinarily be repeated.

The defendant American Home Products offered evidence to prove and claimed to have proved the following facts: In 1967, Halothane was the safest and most widely used anesthetic agent in the country. In the history of medicine, it is doubtful whether any drug had been more extensively studied before and after its introduction than was Halothane. Between 1958 and 1967, American Home sent out more than twenty "dear doctor" letters concerning the findings of those studies. There are always risks inherent in the use of anesthetic agents, and there are greater risks involved in a second operation than in a first. There was no evidence that Halothane caused more liver damage than any other anesthetic, and the cause and effect relationship between the administration of Halothane and the postoperative onset of liver failure could not be established.

Dr. DeLibero offered evidence to prove that a slight rise in temperature did not suggest that a

second use of Halothane was contraindicated and that, under the circumstances, Halothane appeared to be the best anesthetic to administer. Doctors Apuzzo and Foley offered evidence to prove that they had not received any "dear doctor" letters with respect to Halothane; that they were not experts in anesthesiology; and that the entire function of putting a patient to sleep is left up to the anesthesiologist, with no control in that area exercised by the orthopedic surgeon.

On those claims, the jury were required to determine whether American Home Products had given timely and adequate warnings of potentially harmful effects which it knew or should have known might accompany the use of Halothane, and whether the doctors were negligent in their use of Halothane. With respect to all the defendants, the jury had to determine whether the use of Halothane did in fact cause the decedent's death.

We first consider the plaintiff's claim that the court erred in its continual ruling that all testimony of medical experts relating to the cause of the decedent's death, and the effects of Halothane generally, had to be based upon knowledge possessed by those experts on or prior to May 5, 1967. The record reveals that the plaintiff's expert, Dr. Harold O. Conn, was prohibited, over strenuous objection by the plaintiff, from relying upon knowledge acquired subsequent to May 5, 1967, in testifying as to his opinion of the cause of the decedent's death. He was further prohibited from testifying as to medical articles on the subject of hepatitis which he had written and which were published in medical journals after May 5, 1967. The court ruled: "All questions which are posed to any doctor, any expert

called in this case, the court will limit that question to the state of knowledge existing as of May 5, 1967. Now, if that is not agreed to and understood, I'm going to make it as a court order. And you may all have exceptions." The plaintiff continued to except to the ruling.

It is evident that American Home Products' duty to warn of the alleged dangerous propensities of Halothane was dependent upon the state of knowledge concerning Halothane at the time that its breach of duty was alleged to have occurred. Similarly, the standard of care which was applicable to the doctors in the use of Halothane was dependent upon the state of their art at the time that they were allegedly negligent. See *Geraty* v. *Kaufman,* 115 Conn. 563, 573, 162 A. 33. Since the defendants could not be held to standards which exceeded the limits of scientific advances existing at the time of their allegedly tortious conduct, expert testimony tending to show the scope of duties owed could have been properly limited to scientific knowlege existing at that time.

The actual cause of a person's death, however, unlike the scope of duties owed by a person alleged to have caused that death, does not depend upon the state of scientific knowledge on the date of that death. To the contrary, once a person dies, or once any other event transpires, the cause or causes of that death or event remain the same forever, although man's knowledge or understanding of those causes may become more sophisticated and accurate, or more blurred, as time passes. The cause of any death is a physical fact, and like any other physical fact, is subject to proof after the fact by the testimony of experts based upon all available knowledge in existence after as well as before the death. A rule

of evidence, therefore, which would limit a trier of fact to a consideration of knowledge in existence at the time of death for the purpose of determining its cause has no basis in reason or logic. We conclude that the court erred in limiting the basis of all expert testimony to knowledge possessed by the experts in 1967.

The defendants argue that any error in not allowing the experts to base their testimony on knowledge acquired after 1967 was harmless because Dr. Conn did in fact state his opinion to be that the decedent's death was caused by "Halothane hepatitis." We do not agree. The court's blanket ruling not only related to Dr. Conn's testimony, but to the testimony of all experts called at the trial. The plaintiff was prohibited from cross-examining the defendants' experts with respect to knowledge acquired by them after May 5, 1967. Moreover, the ruling related not only to opinions as to what specifically caused the decedent's death, but to opinions concerning the propensities of Halothane to cause liver damage. The court's error was prejudicial in that it cut short the plaintiff's efforts to introduce relevant and material testimony of qualified experts bearing on all phases of the cause of the decedent's death. See *Donch* v. *Kardos,* 149 Conn. 196, 202, 177 A.2d 801.

One further matter requires discussion. The court charged that American Home Products was under a duty to warn users of any substance or ingredient in Halothane which it knew or reasonably should have known had a tendency to affect injuriously an appreciable number of people, though fewer in number than the number of normal users. Both the plaintiff and American Home Products took exception to the "appreciable number of users" portion of the charge, arguing that it had no appli-

cability in a strict liability case. The trial judge noted that the rule was confusing and difficult to apply, but that since it remained the law of this state, he was constrained to charge on it.

When we first enunciated the "appreciable number of users" test in *Crotty* v. *Shartenberg's-New Haven, Inc.*, 147 Conn. 460, 162 A.2d 513, we were discussing the elements required to show a breach of the implied warranty of "reasonable fitness" under § 42-14 of the General Statutes, since repealed. In *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418, we held that to state a cause of action under § 402 A, a plaintiff must allege and prove (1) that the defendant sold the product; (2) that it was in a defective condition, unreasonably dangerous to the user; (3) that it caused physical harm to the user; (4) that the seller was engaged in the business of selling such a product; and (5) that the product was expected to and did reach the user without substantial change in the condition in which it was sold. The doctrine of strict liability in tort is not concerned with implied promises from a manufacturer, but with the sale of any product in a defective condition unreasonably dangerous to the user or consumer or to his property.

A product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities. See *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 300 n.6, 365 A.2d 1180; Restatement (Second), 2 Torts § 402 A, comment j; see also *Basko* v. *Sterling Drug, Inc.*, 416 F.2d 417 (2d Cir.), applying Connecticut law, and note, 53 A.L.R.3d 239. If a manufacturer knows or should know that a product may cause serious injury to users, but does not

warn of the potentially injurious effects either through negligence or because of concern that sales of the product would thereby be reduced, he cannot be absolved from the imposition of strict liability in tort because an "appreciable number of users" would not be adversely affected. If an adverse reaction to a product is difficult to anticipate owing to the small number of persons affected, that fact may well be relevant on the issue of the manufacturer's knowledge. *McEwen* v. *Ortho Pharmaceutical Corporation,* 270 Ore. 375, 528 P.2d 522.

We find ourselves in agreement with the well-reasoned opinion of *Basko* v. *Sterling Drug, Inc.,* supra, 430: "The manufacturer is obligated to warn in cases where the drug may affect only a small number of idiosyncratic or hypersensitive users, and the obligation to warn attached regardless of whether the number of persons affected can fairly be said to be 'appreciable.' The applicable standard was well stated in *Wright* v. *Carter Products, Inc.,* 244 F.2d 53 (2d Cir. 1957), where Judge Waterman said that 'duties to warn are not in all cases, measured by quantitative standards,' id. at 56, and that a manufacturer may in some circumstances have a duty to warn 'those few persons who it knows cannot apply its product without serious injury.' Id. at 58. See also *Davis* v. *Wyeth Laboratories, Inc.,* [399 F.2d 121 (9th Cir.)]; *Sterling Drug, Inc.* v. *Cornish,* [370 F.2d 82 (8th Cir.)]; *Gover* v. *Revlon, Inc.,* 317 F.2d 47 (4th Cir. 1963)." See Noel, "Products Defective Because of Inadequate Directions or Warnings," 23 S.W. L.J. 256, 268.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.