Michele M. VITANZA, Individually and as Executrix of the Estate of Timothy F. Vitanza, Plaintiff–Appellant,

v.

**The UPJOHN COMPANY, Defendant–Appellee.**

**Docket No. 99–7539**

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 1999

Decided: May 5, 2000

Jonathan M. Levine, Stamford, CT (Silver Golub & Teitell LLP, Richard A. Silver, Brad C. Gustafson, of Counsel), for Plaintiff-Appellant Michele Vitanza.

Timothy W. Donahue, Wallingford, CT (Delaney, Zemetis, Donahue, Durham & Noonan, P.C., of Counsel), for Defendant-Appellee Upjohn Company.

Before: FEINBERG, JACOBS, and KATZMANN, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal from a March 1999 judgment of the United States District Court for the District of Connecticut, Dominic J. Squatrito, J., granting defendant's motion for summary judgment on the ground that the "learned intermediary" doctrine barred plaintiff's claim. For the reasons stated below, we believe that the current status of the "learned intermediary" doctrine in Connecticut is not clear, and we conclude that we should certify the controlling question of law to the Connecticut Supreme Court.

Accordingly, it is hereby ORDERED that the Clerk of the Court transmit to the Connecticut Supreme Court a Certificate in the form attached, together with a complete set of the briefs, appendix and record filed by the parties with this court. This panel retains jurisdiction so that, after we receive a response from the Connecticut Supreme Court, we may dispose of the appeal. The parties are further ORDERED to bear equally such fees and costs, if any, as may be required by the Connecticut Supreme Court.

## Certificate

Certificate to the Connecticut Supreme Court pursuant to Second Circuit Local Rule § 0.27 and Conn. Gen.Stat. § 51–199a (West 1999).

### I. The question of law to be answered

On the facts of this case—where (i) a drug manufacturer distributed promotional free samples to physicians and provided appropriate warnings to the physicians, (ii) the drug sample states only that it is to be dispensed by prescription only, (iii) the drug sample is ingested by (and causes injury to) an otherwise unwarned person in the patient's household, and (iv) the drug manufacturer is sued for damages under the Connecticut Product Liability Act, Conn. Gen.Stat. § 52–572m et seq. (CPLA)—is the drug manufacturer insulated from liability as a matter of law by the learned intermediary doctrine?

### II. Discussion

A. Statement of facts relevant to the question certified

Michele M. Vitanza (Mrs. Vitanza, or simply Vitanza) brought this suit individually and as executrix of the estate of her husband, Timothy Vitanza (Mr. Vitanza), against The Upjohn Company (Upjohn), a Delaware corporation transacting business in the state of Connecticut. Upjohn manufactured and marketed a prescription drug under the name Ansaid. That name is an acronym for A Non–Steroidal Anti–Inflammatory Drug. Ansaid is indicated for the acute or long-term treatment of signs and symptoms of rheumatoid arthritis and osteoarthritis, as well as for less serious conditions.

Sometime in early 1992, an Upjohn sales representative provided samples of Ansaid to Mrs. Vitanza's obstetrician/gynecologist Dr. Gary Besser. The samples came in a box, which contained nine so-called blister cards with four Ansaid tablets per card. The labeling on the back of each blister card stated:

Complimentary Package

Not for Sale

4  Tablets

Ansaid 100 mg.  Tablets

FLURBIPROFEN

Each tablet contains flurbiprofen 100 mg.

Information for use and .dosage—see insert.

Store at controlled room temperature 15°–30° C (59°–86° F)

Caution: Federal law prohibits dispensing without prescription.

Each box of Ansaid samples also contained an explanatory insert eight columns long, single-spaced, setting forth information on Clinical Pharmacology, Indications and Usage, Contraindications, Warnings, Precautions, Drug Interactions, Adverse Reactions, Drug Abuse and Dependence, Overdosage, Dosage and Administration. The insert referred to the possibility of allergic reactions to Ansaid, stating that, "ANSAID should not be given to patients in whom ANSAID, aspirin, or other nonsteroidal anti-inflammatory drugs induce asthma, urticaria, or other allergic-type reactions. Fatal asthmatic reactions have been reported in such patients receiving this type of drug." Although there were nine blister cards in each package, there was only one insert per package. The blister cards did not themselves contain any warning. The information contained in the insert was also included in the 1989 Supplement to the Physicians' Desk Reference.

In June 1992, Mrs. Vitanza visited Dr. Besser for a post-partum examination. When Mrs. Vitanza complained that she felt stiffness in her neck, Dr. Besser recommended that she take Ansaid to relieve her symptoms, and gave her several sample blister cards containing Ansaid tablets. Dr. Besser did not, however, provide Mrs. Vitanza with a copy of the insert. Mrs. Vitanza took the Ansaid tablets, and they relieved her symptoms.

In October 1994, over two years after Dr. Besser had given the tablets to Mrs. Vitanza, Mr. Vitanza complained of a stiff neck. Searching through the family medicine cabinet, he found some Ansaid tablets in a blister card that Dr. Besser had given to Mrs. Vitanza but which she had not used. Mr. Vitanza had been informed by his doctors that he had a potentially lethal allergy to aspirin and nonsteroidal anti-inflammatory medications. Accordingly, he checked the back of the Ansaid blister card, quoted above, to determine whether there were any warnings. Mr. Vitanza also checked two medical reference works, the "Time Life Medical Reference Library: Prescription Drugs" and "The New Lexicon Illustrated Medical Encyclopedia." Mr. Vitanza did not find any express statement that Ansaid was a nonsteroidal anti-inflammatory drug or that persons with his sensitivities should avoid Ansaid. Mr. Vitanza took one Ansaid pill.

Shortly after taking the Ansaid pill, Mr. Vitanza experienced great difficulty breathing. He drove himself to the Stamford Hospital Emergency Room in Stamford, Connecticut. Ten minutes after his arrival, he suffered respiratory and cardiac arrest. Mr. Vitanza died between one and two hours later. The cause of death was determined to be a severe anaphylactic reaction to Ansaid. Mr. Vitanza was 34 years old at the time of his death.

Mrs. Vitanza originally filed this suit in October 1995 in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk, stating a claim under the CPLA. Mrs. Vitanza alleged that Mr. Vitanza's death was caused by Upjohn's failure to provide adequate warnings of possible adverse effects on its sample packs.

Upjohn subsequently removed this case to federal court, based on diversity. In July 1996, Mrs. Vitanza moved to certify the question presented in this case to the Connecticut Supreme Court. Judge Squatrito denied that motion, as well as Mrs. Vitanza's motion for reconsideration of that decision. In an opinion issued in March 1999, Judge Squatrito granted Upjohn's motion for summary judgment on the ground that the "learned intermediary" doctrine barred Mrs. Vitanza's claim. This appeal followed.

### B. The nature of the controversy in which the question arose

#### 1. The legal issues involved

The ultimate question of law on this appeal is whether, as the district court concluded, under Connecticut law the learned intermediary doctrine bars the present suit as a matter of law. This court ruled over three decades ago that under that doctrine, Connecticut law exempted a pharmaceutical company from strict liability so long as it warned prescribing physicians of the risks of prescription drugs. See *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969). Upjohn claims that the Connecticut Supreme Court adopted the logic of *Basko* in *Tomer v. American Home Prods. Corp.*, 170 Conn. 681, 368 A.2d 35 (1976). According to Upjohn, these decisions bar the present action. Vitanza responds that *Tomer* did not adopt the learned intermediary doctrine. Instead, Vitanza argues, *Tomer* merely agreed with *Basko* that a manufacturer had a duty to warn even where the drug might only affect a few hypersensitive users.

Since the decisions in *Basko* and *Tomer*, however, there have been a number of legal developments in Connecticut that potentially bear upon the application and vitality of the learned intermediary doctrine. In 1979, the state legislature passed the CPLA, which states that a warning is inadequate unless it is "devised to communicate with the person best able to take or recommend precautions against the potential harm." Conn. Gen.Stat. § 52–572q(d). Vitanza argues that under the CPLA, the learned intermediary doctrine is not an absolute defense as a matter of law, but a defense for the finder of fact to consider. Upjohn responds, relying on this court's decision in *LaMontagne v. E.I. Du Pont De Nemours & Co.*, 41 F.3d 846, 855–56 (2d Cir.1994), that the CPLA merely streamlined pleading requirements, and did not change the existing Connecticut common law on product liability. The *LaMontagne* court, however, rejected a much broader argument than the one Vitanza makes. The plaintiff in *LaMontagne* argued that under the CPLA, it was a jury question as to whether a manufacturer of a non-dangerous component of jaw implants had a duty to warn potential users of the end product even though the manufacturer had no knowledge of any hazards that the end product might cause. See *id.* at 859. The *LaMontagne* court ruled that the CPLA did not abrogate the common-law principle that a duty to warn does not arise unless the seller knew or had reason to know of the hazard. See *id.* In the present case, however, there is no dispute that Upjohn was clearly aware of the hazards of Ansaid; indeed, Upjohn communicated its warning to physicians who agreed to hand out samples of Ansaid.

Moreover, under recent Connecticut appellate decisions, it is not at all clear that it was proper for the district court here to conclude, as a matter of law, that the physician is the only person whom the manufacturer need warn. Vitanza relies upon two decisions from Connecticut appellate courts that construe the relevant provision of the CPLA, *Gajewski v. Pavelo*, 36 Conn.App. 601, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996), and *Sharp v. Wyatt, Inc.*, 31 Conn.App. 824, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994).

In *Sharp*, the estates of three employees of a fuel retailer brought suit against distributors of petroleum products, claiming

that the distributors' failure to warn of hazardous fumes caused the employees' death by asphyxiation. See *Sharp*, 627 A.2d at 1350–51. Reversing the trial court's award of summary judgment in favor of the distributors, the Appellate Court of Connecticut explained that, "In view of [Conn. Gen.Stat. § 52–572q]'s express language, we are satisfied that the provision has incorporated the concerns underlying the sophisticated user doctrine. *It has not done so, however, to the extent that it offers product sellers an affirmative defense.*" *Id.* at 1360 (emphasis added). The question of whether the distributors had discharged their duty to warn was therefore an issue for the trier of fact. See *id.* The Connecticut Supreme Court, specifically noting that the Appellate Court had concluded that "pursuant to § 52–572q(b), the sophisticated user doctrine ... is not an affirmative defense," *Sharp*, 644 A.2d at 873, affirmed that court's reasoning in a per curiam decision, stating that the questions presented by the case "were properly resolved in the thoughtful and comprehensive opinion of the Appellate Court." *Id.* The Connecticut Supreme Court's disposition of *Sharp* arguably indicates that the application of the learned intermediary doctrine is for the jury at trial, not for the judge on summary judgment.

In *Gajewski*, a homeowner sued the manufacturer of a gas-fired boiler and two employees of the city of Bridgeport after the boiler filled the home with carbon monoxide, allegedly causing serious illness to the family living in the home. See *Gajewski*, 652 A.2d at 511. Rejecting plaintiffs' challenge to the instructions the trial court gave to the jury, the Appellate Court concluded that the trial court properly instructed the jury concerning, among other things, "the consideration to be given to the sophisticated user doctrine." *Id.* at 515. The court noted that under *Sharp*, the application of the sophisticated user doctrine is reserved to the trier of fact. See *id.* As in *Sharp*, the Connecticut Supreme Court affirmed in a per curiam decision, commending "the thoughtful and comprehensive opinion of the Appellate Court." *Gajewski*, 670 A.2d at 320.

Vitanza further argues that *Sharp* and *Gajewski* strongly indicate that the traditional common-law "sophisticated user" defense is not a bar to liability, but a defense for the jury to consider. These two cases are significant because this court has equated the "learned intermediary" or "sophisticated intermediary" doctrine with the "knowledgeable user" doctrine. *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 838 (2d Cir.1992). In either case, the doctrine "protects a manufacturer from liability only if the chain of distribution is such that the duty to warn ultimate users should fall on an intermediary in that chain, rather than on the manufacturer." *Id.* (citations omitted).

In response, Upjohn maintains that, first, *Sharp* and *Gajewski* did not involve prescription drugs; and second, that the learned intermediary doctrine is different from the "sophisticated user" defense. Vitanza counters that these arguments are unpersuasive. First, that there will always be a learned intermediary distributing prescription drugs (that is, a doctor), even if true, does not establish that the doctor, rather than the manufacturer, will always be best situated to warn about potential hazards. For example, when the drug is distributed to physicians in the form of promotional free samples in blister cards containing pills to be given to patients, under the CPLA the manufacturer may have a duty to provide a warning on the back of each blister card or a sufficient number of explanatory inserts to allow one to be given to each patient who receives a blister card. Second, Upjohn's effort to distinguish the learned intermediary doctrine from the "sophisticated user" doctrine overlooks this court's treatment of the two doctrines as essentially synonymous. See id. at 838.

More broadly, courts in other jurisdictions have rejected the learned intermediary doctrine as an absolute defense. In *Perez v. Wyeth Labs.*, 161 N.J. 1, 734 A.2d 1245 (1999), the New Jersey Supreme

Court rejected the application of the defense for drugs directly marketed to consumers. See *id.*, 734 A.2d at 1257. The court noted that changing conditions in health care, including patient choice, managed care, and medical advertising, rendered obsolete the traditional model in which the omniscient doctor prescribes treatment for a trusting patient. See *id.* at 1255–56. As the physician might not be an intermediary between the manufacturer and the patient, the court concluded, the force of the learned intermediary doctrine should be limited accordingly. See *id.* at 1257–58. Furthermore, the Restatement (Third) of Torts has noted that "developing case law" may create exceptions to the learned intermediary doctrine, so that under certain circumstances the manufacturer of a prescription drug has a duty to warn potential consumers directly rather than simply warning doctors. See Restatement (Third) of Torts, § 6 cmt. e (1997). While this case does not concern the direct marketing of drugs to patients, the Connecticut Supreme Court may conclude that analogous issues are raised by the distribution of free promotional samples to doctors for patient consumption.

### 2. Appropriateness of certification

■ Connecticut law allows for the certification of questions of state law by the federal courts directly to the Connecticut Supreme Court. See Conn. Gen.Stat. § 51–199a. The certification procedure "may further the interests of federal/state comity." *Dorman v. Satti,* 862 F.2d 432, 435 (2d Cir.1988); see also *Jayaraj v. Scappini,* 66 F.3d 36, 40 (2d Cir.1995) (recommending certification as an alternative to abstention). We believe that the question presented by this case should be certified to the Connecticut Supreme Court for several reasons. In doing so, we exercise our own discretion. See *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51 (2d Cir.1992) (noting permissive language of Second Circuit rule).[1]

■ First, it is not clear that the rule of *Basko* and *Tomer* remains authoritative. "Certification is particularly appropriate when the state's highest court has cast doubt on the scope or continued validity of one of its earlier holdings...." *Liriano v. Hobart Corp.,* 132 F.3d 124, 132 (2d Cir. 1998). The Connecticut Supreme Court has not specifically spoken to the question presented in this case. See supra Part I. Its affirmances of *Sharp* and *Gajewski,* on the basis of the appellate courts' reasoning in those cases, suggest that it might hold that application of the learned intermediary doctrine here is not an affirmative defense but rather raises issues to be submitted to the trier of fact. If the Connecticut Supreme Court does so hold, summary judgment should not have been entered for Upjohn.

Second, we are reluctant to freeze the state of Connecticut law as it was when *Basko* and *Tomer* were decided. Were we to do so, one party would have a strong incentive, if there is diversity jurisdiction, to remove these types of cases to federal court, thereby consistently depriving the Connecticut Supreme Court of any opportunity to resolve this issue. See *Liriano,* 132 F.3d at 132 ("[A] party favored by the lower court decisions or by the weakened high court holding will seek federal jurisdiction with the knowledge that the federal courts, unlike the state's highest court, will feel virtually bound to follow these decisions."). *Liriano*'s concern is borne out in this case, which was initially filed in Connecticut state court, and then removed to federal court. Cf. *Abrahams v. Young & Rubicam Inc.,* 79 F.3d 234, 239 (2d Cir. 1996) (expressing concern that failure to certify "might also lead to forum shopping to achieve or avoid federal disposition" of the state law claim). We are particularly reluctant to confine judicial interpretation of the learned intermediary doctrine to the federal courts, as Connecticut " 'has a strong interest in deciding the issue certi-

---

**1.** Thus we neither remand this case to the district court with instructions to certify nor reach the question of whether the district

court abused its discretion in declining to certify the issue presented in this case.

fied rather than having the only precedent on point be that of the federal court, which may be mistaken.'" *Great Northern Ins. Co. v. Mount Vernon Fire Ins. Co.,* 143 F.3d 659, 662 (2d Cir.1998) (quoting *Home Ins. Co. v. American Home Prods. Corp.,* 873 F.2d 520, 522 (2d Cir.1989)).

Third, because the doctrine at issue in this case was adopted by Connecticut and affects its citizens, Connecticut has an obvious interest in having its courts sort out the public policy issues on both sides that bear upon the question. See *Federal Deposit Ins. Corp. v. Hillcrest Assocs.,* 36 F.3d 1, 4 (2d Cir.1994); *Home Ins. Corp.,* 873 F.2d at 522.

In sum, we believe that the question we certify is an unsettled and significant question of state law that will control the outcome of this appeal, see Local Rule § 0.27, as to which there is no controlling precedent of the Connecticut Supreme Court. See Conn. Gen.Stat. § 51–199a. For these reasons, we believe that resolution of the certified question by the Connecticut Supreme Court would aid in the administration of justice.