Michele M. **VITANZA**, Individually and as Executrix of the Estate of Timothy F. Vitanza, Plaintiff–Appellant,

v.

The **UPJOHN COMPANY,** Defendant–Appellee.

Docket No. 99–7539.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1999.

Decided Nov. 13, 2001.

Jonathan M. Levine, Stamford, CT, (Silver Golub & Teitell LLP, Richard A. Silver, Brad C. Gustafson, of Counsel), for Plaintiff–Appellant Michele Vitanza.

Timothy W. Donahue, Wallingford, CT, (Delaney, Zemetis, Donahue, Durham & Noonan, P.C., of Counsel), for Defendant–Appellee Upjohn Company.

Before FEINBERG, JACOBS, and KATZMANN, Circuit Judges.

FEINBERG, Circuit Judge.

This is an appeal from a March 1999 judgment of the United States District

Court for the District of Connecticut, Dominic J. Squatrito, J., granting defendant's motion for summary judgment on the ground that the "learned intermediary" doctrine barred plaintiff's claim. In May 2000, we certified the controlling question of law in this case to the Connecticut Supreme Court. *Vitanza v. Upjohn Co.*, 214 F.3d 73, 74 (2d Cir.2000). In August 2001, that Court held that on the facts of this case, the defendant drug manufacturer was insulated from liability as a matter of law by the learned intermediary doctrine.[1] *Vitanza v. Upjohn Co.*, 257 Conn. 365, 778 A.2d 829 (2001).

## I.

### A. Background

The following statement of relevant facts and description of the legal proceedings leading to our May 2000 certification is taken almost verbatim from our prior opinion. Michele M. Vitanza (Mrs. Vitanza, or simply Vitanza) brought this suit individually and as executrix of the estate of her husband, Timothy Vitanza (Mr. Vitanza), against The Upjohn Company (Upjohn), a Delaware corporation transacting business in the state of Connecticut. Upjohn manufactured and marketed a prescription drug under the name Ansaid, which is an acronym for A Non Steroidal Anti Inflammatory Drug. Ansaid is indicated for the acute or long-term treatment of rheumatoid arthritis and osteoarthritis, as well as for less serious conditions.

Sometime in early 1992, an Upjohn sales representative provided samples of Ansaid to Dr. Gary Besser, Mrs. Vitanza's obstetrician/gynecologist. The samples came in a box, which contained nine so-called blister cards with four Ansaid tablets per card. The labeling on the back of each blister card stated:

Complimentary Package
Not for Sale
4 Tablets
Ansaid 100 mg. Tablets
FLURBIPROFEN

Each tablet contains flurbiprofen 100 mg.

Information for use and dosage—see insert.

Store at controlled room temperature 15–30°C (59–86°F).

Caution: Federal law prohibits dispensing without prescription.

Each box of Ansaid samples also contained an explanatory insert eight columns long, single-spaced, setting forth information on Clinical Pharmacology, Indications and Usage, Contraindications, Warnings, Precautions, Drug Interactions, Adverse Reactions, Drug Abuse and Dependence, Overdosage, Dosage and Administration. The insert referred to the possibility of allergic reactions to Ansaid, stating that, "ANSAID should not be given to patients in whom ANSAID, aspirin, or other nonsteroidal anti-inflammatory drugs induce asthma, urticaria, or other allergic-type reactions. Fatal asthmatic reactions have been reported in such patients receiving this type of drug." Although there were nine blister cards in each package, there was only one insert per package. The blister cards themselves did not contain any warning. The information contained in the insert was also included in the 1989 Supplement to the Physicians' Desk Reference.

In June 1992, Mrs. Vitanza visited Dr. Besser, complaining of stiffness in her neck. Dr. Besser recommended that she

---

1. After the certified opinion came down, we asked the parties to file letter briefs commenting on the answer of the Connecticut Supreme Court. Defendant Upjohn responded that the opinion called for affirmance, and plaintiff Vitanza chose not to respond.

take Ansaid to relieve her symptoms, and gave her several sample blister cards containing Ansaid tablets. Dr. Besser did not, however, provide Mrs. Vitanza with a copy of the insert. Mrs. Vitanza took the Ansaid tablets, and they relieved her symptoms.

Over two years later, in October 1994, Mr. Vitanza also had a stiff neck. Searching through the family medicine cabinet, he found some Ansaid tablets in a blister card that Dr. Besser had given to Mrs. Vitanza but which she had not used. Mr. Vitanza had been informed by his doctors that he had a potentially lethal allergy to aspirin and nonsteroidal anti-inflammatory medications. Accordingly, he checked the back of the Ansaid blister card, quoted above, to determine whether there were any warnings. Mr. Vitanza also checked two medical reference works, the "Time Life Medical Reference Library: Prescription Drugs" and "The New Lexicon Illustrated Medical Encyclopedia." Mr. Vitanza did not find any express statement that Ansaid was a nonsteroidal anti-inflammatory drug or that persons with his sensitivities should avoid Ansaid. Mr. Vitanza took one Ansaid pill.

Shortly after taking the Ansaid pill, Mr. Vitanza experienced great difficulty breathing. He drove himself to the Stamford Hospital Emergency Room in Stamford, Connecticut. Ten minutes after his arrival, he suffered respiratory and cardiac arrest. Mr. Vitanza died between one and two hours later. The cause of death was determined to be a severe anaphylactic reaction to Ansaid. At the time of his death, Mr. Vitanza was 34 years old.

In October 1995, Mrs. Vitanza filed this suit in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk, stating a claim under the Connecticut Products Liability Act, Conn. Gen.Stat. § 52–572m *et seq.* (CPLA). Mrs. Vitanza

alleged that Mr. Vitanza's death was caused by Upjohn's failure to provide adequate warnings on its sample packs of the possible adverse effects of using Ansaid. Upjohn subsequently removed the case to federal court, based on diversity. In July 1996, Mrs. Vitanza moved to certify the question presented in this case to the Connecticut Supreme Court. Judge Squatrito denied that motion, as well as Mrs. Vitanza's motion for reconsideration of that decision. In an opinion issued in March 1999, Judge Squatrito granted Upjohn's motion for summary judgment on the ground that the "learned intermediary" doctrine barred Mrs. Vitanza's claim. This appeal followed.

**B. The certification opinion of this court**

In our opinion issued in May 2000 (sometimes referred to hereafter as *Vitanza I*), we certified the following question of law to the Connecticut Supreme Court:

On the facts of this case—where (i) a drug manufacturer distributed promotional free samples to physicians and provided appropriate warnings to the physicians, (ii) the drug sample states only that it is to be dispensed by prescription only, (iii) the drug sample is ingested by (and causes injury to) an otherwise unwarned person in the patient's household, and (iv) the drug manufacturer is sued for damages under the Connecticut Product Liability Act, Conn. Gen.Stat. § 52–572m *et seq.* (CPLA)-is the drug manufacturer insulated from liability as a matter of law by the learned intermediary doctrine?

In *Vitanza I*, we noted that the Second Circuit had held that under Connecticut law a drug manufacturer was so insulated as long as it warned prescribing physicians of the risks of prescription drugs. 214 F.3d at 76 (citing *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969)).

Nevertheless, we certified the question because we believed that various developments in the law since our decision in *Basko* over 30 years earlier might cast some doubt on the authority of that decision. For example, in 1979 the Connecticut legislature had passed the CPLA, and Vitanza argued that under that statute, the learned intermediary doctrine is not an absolute defense as a matter of law, but a defense for the finder of fact to consider. *Vitanza I*, 214 F.3d at 76. Also, in the past decade there had been two Connecticut appellate decisions holding that under the CPLA the sophisticated user defense was not a bar to liability, but a defense for the jury to consider. *Vitanza I* pointed out that these Connecticut decisions were "significant" because in another prior decision of this court—*In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 838 (2d Cir.1992)—we had equated the "learned intermediary" doctrine with the "knowledgeable user" doctrine. *Vitanza I*, 214 F.3d at 77. Our certifying opinion also noted that courts in other jurisdictions had found that changed conditions in the health care industry, including direct marketing of prescription drugs to patients and increased patient choice, mandated some exceptions to the learned intermediary doctrine. *Id.* at 77–78.

C.  The Connecticut Supreme Court decision in response to our certification

In a thorough, unanimous opinion issued in August 2001 (hereafter referred to as *Vitanza II*), the Connecticut Supreme Court analyzed the language of the CPLA and its legislative history, and held that the CPLA had not abrogated the common law learned intermediary doctrine recognized in *Basko*. *Vitanza II*, 778 A.2d at 837–45. The court also held that the learned intermediary doctrine and the sophisticated user doctrine are not appropriately analogized, because the learned in-

termediary doctrine applies specifically to the medical field and generally involves unavoidably unsafe products which by law must be distributed by an intermediary. This circumstance is not present in application of the sophisticated user doctrine. As a result, the court held, the cases holding the sophisticated user defense to be a question for the jury were not relevant to the case at hand. *Id.* at 845–46. In addition, the opinion in *Vitanza II* noted that courts have dealt with changing circumstances by recognizing exceptions to the learned intermediary doctrine in cases involving a lack of communication between patients and their physicians, and in cases where patients essentially control selection of the product. The court declined to decide whether it should recognize any of these exceptions in the present context since there was no lack of communication between physician and patient. The court also held that on the facts of this case there was no reason to create an entirely new exception to the learned intermediary doctrine. *Id.* at 846–47. The court concluded its opinion by stating "The certified question is answered: Yes." *Id.* at 847. In other words, the Connecticut Supreme Court held in *Vitanza II* that defendant Upjohn is insulated from liability to plaintiff Vitanza.

II.  Conclusion

The governing law on the controlling issue in this diversity case is the law of Connecticut. We apply that law, as stated by the Connecticut Supreme Court. We affirm the district court's grant of summary judgment to Upjohn.