KATZMANN, Circuit Judge,
dissenting:
Unlike the majority, I believe this case may be simply resolved by looking only at the ordinary meaning of the words in the statute. The majority’s approach is problematic: first, it creates an ambiguity in the statute that does not exist; second, in confronting that supposed ambiguity, the majority breaks from our longstanding practice of avoiding difficult constitutional questions when possible; and third, it adopts a construction of the statute that leads to absurd results. Because we may easily avoid all of these problems by allowing the ordinary meaning of the statute to control and certifying the question of the applicability of New York’s statute to the sale and marketing of firearms to the New York Court of Appeals, I respectfully dissent.
To begin, the meaning of the statute is unambiguous. Although a statute’s plain meaning is often elusive, the Supreme Court has “stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 254-55, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (internal citations and quotation marks omitted); Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir.1999) (“It is axiomatic that the plain meaning of a statute controls its interpretation ... and that judicial review must end at the statute’s unambiguous terms. Legislative history and other tools of interpretation may be *405 relied upon only if the terms of the statute are ambiguous.”)- When, as in this ease, “a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.” Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). As the district court correctly noted, 401 F.Supp.2d at 261, the ordinary meaning of the word “applicable” is clear; any attempt to read that word as meaning anything more than “capable of being applied” is a strained effort to read an ambiguity that does not exist into the statute. See Riverkeeper, Inc. v. EPA, 475 F.3d 83,110 (2d Cir.2007) (rejecting EPA’s attempt to “create ambiguity when none otherwise exists by defining statutory terms contrary to their plain meaning”). The majority’s attempt to limit the reach of the term “applicable” to statutes (1) expressly regulating firearms, (2) that “clearly can be said to apply,” or (3) that “actually regulate” the sale and marketing of firearms would work a significant change in the meaning of the predicate exception, substituting its preferences for the words Congress actually selected. See In re Coltex Loop Central Three Partners, L.P., 138 F.3d 39, 43 (2d Cir.1998) (“If Congress had intended to modify those words with the addition of the words ‘only,’ ‘solely,’ or even ‘primarily,’ it would have done so. For the court to add such modifiers would work a significant and unwarranted change in the meaning and consequence of the statute.”).
Because the meaning of the statutory language is clear, we ought not go further. In this case, that approach is faithful to one of the most prudent and oft-followed rules of statutory construction — that we avoid reaching constitutional questions when a fair reading of the statutory language permits us to do so. See, e.g., Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944) (“If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.”). As a result, if possible, courts must interpret statutes to avert constitutional questions, rather than to embrace them, as the majority does here. See Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (“When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.”); Able v. United States, 88 F.3d 1280, 1298 (2d Cir.1996) (“[Bjecause this is a challenge to the constitutionality of the Act, we are required to construe it ‘so as to avoid constitutional difficulties whenever possible.’ ”). The majority takes pains to find the language of the statute ambiguous — that is, susceptible of more than one reading — but, instead of opting for the most natural meaning of the statutory text, the majority adopts a construction requiring it to address head-on constitutional dilemmas that go to the heart of principles of federalism, separation of powers, and the First Amendment. Congress’s requirement that state and federal courts immediately dismiss pending lawsuits presents novel and complex issues regarding the allocation of authority between the federal government and the states, and the courts and the legislature. Whether the majority is correct in its constitutional analysis is beside the point. Its choice to confront such difficult questions risks setting potentially far-reaching precedents needlessly, ignoring our eminently sensible practice of constitutional avoidance.
To justify its approach, the majority cites legislative history. I have long been *406 an advocate of examining authoritative legislative history when a statute is ambiguous, see, e.g., Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143-44 (2d Cir.2002), but here the statute is unambiguous. In any event, when Congress legislates in “traditionally sensitive areas,” if it intends to alter the state-federal balance or the allocation of power between the branches of government, Congress should state clearly that intent in the text of the statute, not merely through statements on the floor by legislators. See United States v. Bass, 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In the matter at hand, where the more natural reading of the statute allows us to avoid such difficult constitutional questions, we need not proceed beyond the plain meaning to complicated legislative history, especially when to do so would require us to confront those hard issues.
The majority holds, without any specific explanation, that New York’s § 240.45 does not apply to the conduct the City cites in its complaint. Despite its repeated assertions that a statute need not expressly regulate firearms to be “applicable” to firearms,[1] the majority comes to the conclusion that § 240.45 is not a statute that “clearly can be said to regulate the firearms industry” supra, at 402, or “actually regulatefs] the firearm industry.” Supra, at 404. In the wake of the majority’s unclear language and rationale surrounding its holding, future courts are left without guidance as to how to discern when a predicate statute applies. Beyond this lack of clarity, in unnecessarily finding ambiguity in the statute, the construction of the statute the majority selects leads to the sort of practical problems and absurd results we usually try to avoid. Clinton v. City of New York, 524 U.S. 417, 429, 118 S.Ct. 2091,141 L.Ed.2d 393 (1998); United States v. Dauray, 215 F.3d 257, 264 (2d Cir.2000). The majority’s construction, particularly with respect to its statement that the predicate exception covers statutes that “actually” regulate firearms, really boils down to an empirical question: has a state court yet applied a statute of general applicability to the sale and marketing of firearms? Under the majority’s approach, the apparently insurmountable obstacle for the plaintiffs here is that the New York courts have not yet addressed the question — as such, the majority feels free to conclude that § 240.45 is not “applicable” to the sale and marketing of firearms. Unlike, say, a fruit, which is edible long before someone has eaten it, or gasoline, which is flammable even before someone has ignited it, the majority finds that a state law is not applicable until a state court actually applies it. See, e.g., Berhe v. Gonzales, 464 F.3d 74, 84 (1st Cir.2006) (“It is clear we read ‘applicable’ to mean, not the law actually applied, but, consistent with the ordinary meaning of the word, the law ‘capable of being applied.’ ”) (quoting Merriam-Webster’s Collegiate Dictionary 56 (10th ed.2001) (emphasis in original)).
Even more fundamentally, what the majority’s approach ignores is that it treats parties differently based on whether or not they may invoke the jurisdiction of the federal courts. Consider the problem of a plaintiff who brings a claim in state court *407 under a state statute of general applicability which has not yet been applied to the sale and marketing of firearms. Under the majority’s construction, plaintiffs who bring such cases against defendants who may not remove to federal court have the opportunity to ask the state court to determine whether the predicate exception might apply. But plaintiffs who bring such cases against defendants who may remove will be deprived of that opportunity because the majority holds that federal courts must dismiss those cases immediately, as the state statutes invoked do not yet meet the majority’s test that they “actually” regulate the sale and marketing of firearms. Not only does this approach treat identically situated parties differently with no apparent rational basis, it invites forum shopping, see Erie R.R. v. Tompkins, 304 U.S. 64, 74-77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Vitanza v. Upjohn Co., 214 F.3d 73, 78-79 (2d Cir.2000). Indeed, under the majority’s construction, federal law may mean one thing in federal courts, and something else entirely in state courts, a result the Supreme Court found intolerable nearly two hundred years ago in Martin v. Hunter’s Lessee, 1 Wheat. 304, 14 U.S. 304, 347-48, 4 L.Ed. 97 (1816).[2] Plaintiffs similar to those in this case, who may find themselves in federal court under diversity jurisdiction, face an intractable problem — their claims might fall under the predicate exception if a state court says so, but if they ask a state court, the defendants will remove to a federal court, which must dismiss the claim because the state court has not yet spoken. “That’s some catch, that Catch-22.” Joseph Heller, Catch-22 at 52 (1961).
In sum, we need not confront these problems if we adhere to the plain meaning of the statute. Since the ordinary meaning of the words of the statute is clear, I would then turn to whether the New York criminal-nuisance statute, New York Penal Law § 240.45, is in fact “applicable to the sale and marketing of firearms.” Whether that state statute serves as a predicate statute is a matter of federal law for this Court to address. But the threshold question of what conduct the state statute encompasses is a question of state law. In keeping with our preference that states define the meaning of their own laws in the first instance, Allstate Ins. Co. v. Serio, 261 F.3d 143, 150 (2d Cir.2001) (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)), and because the outcome of this case turns on the answer to this important question of state law, I would certify the question of the scope of New York Penal Law § 240.45 to the highest court of the State of New York, the New York Court of Appeals. Even assuming arguendo, as the majority apparently believes, that a state law does not apply until a state court applies it, then there is all the more reason for a federal court to avail itself of established procedures which enable it to seek the views of the state’s highest courts as to the meaning of impor *408 tant questions of state law. After all, “[a]ny of our determinations of state law based upon prediction, rather than authoritative construction by the State’s highest court, carries risk, especially if we turn a party out of court on a theory later repudiated by the State.” Nicholson v. Scoppetta, 344 F.3d 154, 170 (2d Cir.2003). In certifying, we would be recognizing that we should look to the New York Court of Appeals to interpret state laws for which no controlling precedent of that court exists. On many occasions, we have greatly benefitted from certifying significant state-law questions to the New York Court of Appeals. See, e.g., O’Mara v. Town of Wappinger, 485 F.3d 693, 699 (2d Cir.2007); King v. Fox, 458 F.3d 39, 40 (2d Cir.2006) (per curiam); Carney v. Philippone, 368 F.3d 164, 166 (2d Cir.2004) (per curiam). See generally Judith S. Kaye & Kenneth I. Weissman, Interactive Judicial Federalism: Certified Questions in New York, 69 Fordham L.Rev. 373 (2000). If the New York Court of Appeals were to determine that New York’s criminal-nuisance statute is, in fact, “applicable to the sale and marketing of firearms,” and if the plaintiffs can prove that the defendants’ violation of that statute was knowing, as is now required under the PLCAA, see 15 U.S.C. § 7903(5)(A)(iii), then the predicate exception would apply. Alternatively, the New York Court of Appeals could determine that the state statute is not applicable to the sale and marketing of firearms, in which case this Court would not have to address the thorny constitutional questions the majority elects to resolve now. The matter before us is thus a textbook example of when certification is appropriate. See, e.g., Nicholson, 344 F.3d at 169-171; Serio, 261 F.3d at 150-53, 155; cf. Railroad Comm’n of Texas v. Pullman Co., 312 U.S. 496, 500-01, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
For the reasons stated above, I respectfully dissent.

. "We find nothing in the statute that requires any express language regarding firearms to be included in a statute in order for that statute to fall within the predicate exception." Supra, at 400. "We also agree with the District Court's rejection of the Firearms Suppliers’ argument that the predicate exception is necessarily limited to statutes that expressly regulate the firearms industry." Supra, at 400. "Yet, as also stated, we do not agree that the PLCAA requires that a predicate statute expressly refer to the firearms industry." Supra, at 401.

. Another dilemma posed by the majority’s construction involves how a state court should act when placed in a situation where a federal court has already ruled on the applicability of a state statute to the sale and marketing of firearms. For instance, suppose a federal court has already held that a claim brought under a state statute of general applicability does not fall within the predicate exception because that state’s courts have not yet spoken to the issue. Later, a plaintiff brings an identical claim under the identical state statute in state court, and the defendant invokes the PLCAA as an affirmative defense. The state court, bound to follow the statute, must decide whether to dismiss the case or assert that its new interpretation of state law provides the plaintiff refuge under the predicate exception. It is precisely this kind of delicate problem of federalism that the majority’s approach invites.